NEAL McENANNY, Respondent, *against* JAMES KYLE *et al.*, impleaded with John Bannon, Appellant.

(Decided June 6th, 1887.)

Plaintiff, while employed by the owners of a building in course of con-
struction in cleaning out rubbish from the cellar, was injured by the
fall of a mass of brick, stone, and timber from the fifth story, caused
by the overloading of that floor with brick and stone, by the con-
tractor for the mason work, who was erecting the walls. The plans
and specifications of the building had been approved by the building
department, and the mason work and carpenter work had been con-
tracted for with the owners, to be done according to the plans and
specifications, by separate contractors, respectively, who were well
known, experienced, and competent. An inspector of the building
department had examined the work every day as it progressed, and
approved it up to the day of the accident; but on that day he and
others had warned the employes of the contractor for the mason work
who were hoisting brick not to overload the beams. It did not

McEnanny *v.* Kyle.

appear that the owners had knowledge, or even constructive notice, of the excessive overloading of the fifth floor. *Held,* that they were not liable for the injury to plaintiff.

APPEAL from a judgment of this court entered upon the verdict of a jury and from an order denying a motion for a new trial.

The facts are stated in the opinion.

*Roe & Mackin,* for appellants.

*J. Noble Hayes,* for respondent.

ALLEN, J. — This is an appeal from a judgment in favor of the plaintiff against the defendant James Kyle entered upon a verdict and also from an order denying a motion for a new trial.

The action was brought to recover damages for personal injuries. The defendants James, Robert, and John M. Kyle were partners engaged in business as builders and real estate agents, and the defendant John Bannon was a mason and contractor. The defendants Kyle were the owners of the building No. 232 East 45th Street in this city, which at the time of the accident to the plaintiff was in the process of construction and had progressed to about the fifth story, the front being partly up.

The defendant James Kyle prepared the plans and specifications of the building, and they were approved by the building department, and the defendant Bannon by an agreement in writing contracted to do the mason work according to the plans in a workmanlike manner. The contract for the carpenters' work was made with Watkins Brothers, who agreed to furnish and put up all the materials called for in the carpenters' plans and specifications.

It was shown that the defendant Bannon was in good standing as a contractor and mason, and had been known to the defendant for seven or eight years, and that the carpenters were competent contractors extensively engaged in

business, and had been known to the defendant Kyle for about ten years. The defendant Kyle testified that he had full confidence in their doing the work.

The mason Bannon, for the purpose of raising brick to the upper floors for use in the building, had hired a hoisting machine which was worked by men in his employ, and was in use on the 25th day of March, 1884, the day of the accident, for raising brick, mortar, and stones to the fifth story.

On the morning of the 25th day of March, 1884, the defendant James Kyle employed the plaintiff to clear out some rubbish from the cellar. He had previously been in the employ of Bannon on this building and was dismissed the day before the accident. About five o'clock in the afternoon of the 25th day of March, the plaintiff and a fellow-workman were filling a barrow in the cellar, a few feet from the light shaft near the westerly side of the building, when a mass of brick, stone, and timber fell upon them, and the plaintiff was injured and his fellow-workman killed. The carriage way from the fifth story to the cellar was broken down between the trimmer beams on the west side of the well-hole.

Inspector Osborne, of the building department, who examined the building every day when it was in the process of erection, testified that he found nothing in the carpenters' work to criticise or find fault with; that the work was properly done and the timbers properly supported. About eleven o'clock on the morning of the accident he visited the building and found about fifteen hundred brick or more on the beams of the fifth story, and a few stones. He told the men who were hoisting the brick and stones, in the presence of the foreman of the defendant Bannon, "not to overload the beams; if they did, they would have them in the cellar." He also testified that the cause of the accident was the overloading the fifth story with brick, and that he could account for it in no other way.

The witness Hine went upon the fifth story in the morning, and saw the machine hoisting the brick, and the brick dumped alongside the well-hole, and told the laborers that

if they kept on that way they would break the house down. He went there also in the afternoon, and estimates the number of the brick on the platform as between three or four thousand, weighing about three tons. He spoke to Bannon's brother, who was the foreman, and said to him, "Don't you pile too many brick here; if you do, you will have this broken down." Bannon then said something about the expense of hoisting them, and then said, "we want to get rid of this hoisting machine, which costs us ten dollars a day. We want to get rid of it to-day, if we can hoist brick enough to put up our front."

At the close of plaintiff's case, and also at the close of all the testimony, the defendants Kyle moved to dismiss the complaint, on the ground that there was no evidence showing negligence on their part, or notice or knowledge of omission on the part of Bannon to properly perform his contract, and that it appeared from the evidence that the only authority Kyle had over the work was to see that the masons' and carpenters' work was done according to the contract.

The relation existing between the plaintiff and the defendant Kyle was that of master and servant. The duty of Kyle to the plaintiff as such master was to exercise ordinary and reasonable care in furnishing a safe and proper place in which to prosecute the work which he was engaged to perform, and competent fellow-workmen.

The contract which the law implies between master and servant does not make the master an insurer of the servant's safety, or the safety of the place in which he is to do his work. He is bound only to the exercise of ordinary and reasonable care in that respect, and if the master has failed in his duty in this regard, and in consequence of such failure the servant has been injured, he may recover of the master, provided he is without fault on his part, and has not, voluntarily and with knowledge or competent means of knowledge of the danger, assumed the risks or the consequences of his master's negligence.

The defendant Kyle's liability in this case to the plaintiff,

depends, therefore, upon the decision of the question whether the defendant Kyle complied with his duty to the plaintiff in accordance with the principles of law above stated.

It is conceded that the accident which caused the plaintiff's injuries occurred from one of two causes : either from insufficient support of the beams in the fifth story, or from the extraordinary load of brick and stone which was placed upon these beams. It seems almost a certainty, as testified to by the inspector of the building department, that the accident was caused solely by improperly overloading the place near the edge of the carriage way with brick and stone by the defendant Bannon and his workmen. As the accident was brought about in the manner above stated, the defendant Kyle's liability must depend upon some negligence on his part connected with the cause of the accident as above stated. No other neglect or omission of duty is shown.

The defendant Bannon, and the carpenters Watkins Brothers, cannot be deemed the servants of the defendant Kyle ; they were independent contractors. The written contracts in evidence in the case show this. They were to do the brick work and the carpenter work of the house respectively, according to the plans and specifications, and no right of control or direction of the work by the owner was reserved in the contract. They employed and discharged their own servants, and represented their employer only as to the results. Kyle had the undoubted right to examine the building as the work progressed to see that proper materials were used, and that the work was done in accordance with the contract. Bannon testifies that Kyle never directed the work to be done different from his contract. It seems plain enough from the testimony that there was no such interference with the contractors or such assuming control of the work as would establish the relation of master and servant ; but even were it the fact that Kyle did interfere with some parts of the work, he would only be liable for the injury which was traceable to his interference.

McEnanny *v.* Kyle.

In *Heffernan* v. *Benkard* (1 Robt. 436), Judge Bos-WORTH understood the rule laid down by the Court of Appeals to be this : " If an owner modifies in any respect his contract with those contracting to erect a building so that in doing any particular act they are obeying the direction of the owner, if that act is negligent and dangerous, and damage ensues, the owner is liable. In such a case it is his duty to see that what is done under his special orders is not negligently done."

Now, under all these circumstances, has the plaintiff shown a failure of Kyle's duty to him to furnish him a safe and proper place in which to work ?

We have failed to find in the case any proof of negligence on the part of Kyle towards the plaintiff, sufficient to carry the case to the jury, and we think the complaint should be dismissed as to the defendants Kyle.

The plans and specifications of the building in question were approved by the building department. The building had been, so far as it progressed, and was being constructed pursuant to such plans, and to the satisfaction of the building department. An inspector of that department examined the work every day, and testified that both the carpenter work and the mason work were properly performed up to the day of the accident. Contractors well known as skilful and competent in their business were selected to do the mason work and the carpenter work. Kyle had the right to place reliance upon the qualifications and good character of the contractors, and he was not bound to anticipate misconduct on their part; so that, to make the defendant Kyle liable in this case, some participation in or knowledge of the particular acts through which the accident occurred must be brought home to him, or some proof given that he omitted to exercise proper care to discover it.

According to the testimony, the carpenter work of the building was properly constructed for the purpose for which it was intended. It was not built with reference to sustaining the weight of three tons of brick piled together on the edge of the carriage way. According to the testi-

mony of the inspector, Kyle, Watkins, and Hines, the cause of the accident was the excessive overloading of the fifth floor by Bannon after having been warned by the inspector, Watkins, and Hines. There is no evidence that Kyle had any knowledge whatever of this proceeding, nor is there any fact shown to have been brought to his attention from which constructive notice of Bannon's conduct could be inferred. He was not upon the upper floor of the building at any time during the day the accident occurred. He was not at the building at the time the accident occurred. There is no proof which indicates that he had any knowledge that the hoisting machine was there, or that bricks or stone were being hoisted to the fifth story. The only testimony relied upon by the plaintiff in that respect is the testimony of the plaintiff himself, that he heard Kyle say to Bannon that there was no trouble with the coping stones if they were going to put them up; they were all marked. There is no evidence even that the coping stones were being raised at the time.

The judgment and order denying the motion for a new trial should be reversed and a new trial ordered, with costs to abide the event.

J. F. DALY and BOOKSTAVER, JJ., concurred.

Judgment reversed and new trial ordered, with costs to abide event.