## ROTTER v. GOERLTIZ.

(*Common Pleas of New York City and County, General Term.* January 5, 1891.)

LANDLORD AND TENANT—LIABILITIES OF LANDLORD.

> The owner of two adjoining lots with buildings thereon, part of one of which was occupied by a tenant under a written lease, contracted for the removal of the other building, giving the contractor sole charge of the work, and requesting him not to interfere with the walls of the adjoining building. In an action by the tenant against the owner for injuries to his property by the removal of the walls of the other building, leaving part of the demised premises exposed, it did not appear that the lease contained any covenant to repair, or keep in repair, the premises, or that the adjacent property should remain in the same condition as at the time of hiring, nor was it claimed that there were any false representations as to the condition of the demised premises; and the evidence justified a finding that no disturbance of such premises was contemplated by defendant when he made the contract, or was necessarily involved in doing the work under it. *Held*, that a judgment for defendant should be sustained.

Appeal from third district court.

Action by Moritz Rotter against John Goerltiz. Plaintiff appeals from a judgment dismissing his complaint.

Argued before BOOKSTAVER and BISCHOFF, JJ.

*John M. Tierney,* for appellant. *Maurice Untermeyer,* for respondent.

BOOKSTAVER, J. The respondent was the owner of the premises known as Nos. 17 and 19 Greenwich avenue, in this city and the appellant was in occupation of the ground and basement floor of No. 17, as a tenement, under a written lease expiring May 1, 1891. The respondent desiring to build on No. 19 made a contract with Theodore E. Tripler to take down the old building on it, and remove the *débris*. Mr. Tripler was to have sole charge of that work, and was especially requested by the respondent not to interfere with the walls of No. 17 in doing it. In the latter part of June, or the first of July, Mr. Tripler and his men commenced work under this contract, and it is

·claimed by the appellant that in removing the walls of No. 19 the entire westerly side of the extension occupied by him on No. 17 was exposed, and his carpets, furniture, etc., in that apartment were injured by rain.    This action is brought to recover for that injury.    It is true that in every written lease there is an implied covenant on the part of the lessor that the lessee shall have ·quiet enjoyment of the premises during the demised term, which is not affected by the statute declaring no covenants shall be implied in conveyances of real estate.    *Moffat* v. *Strong*, 9 Bosw. 57; *Mayor* v. *Mabie*, 13 N. Y. 151; *Mack* v. *Patchin*, 29 How. Pr. 20, affirmed 42 N. Y. 167.    But, as was said by BEARDSLEY, J., in *Cleves* v. *Willoughby*, 7 Hill, 86, speaking of implied ·covenants in instruments relating to land:  "That doctrine has a very limited application for any purpose to a lease for years, and in every case has reference to the 'title,' and not to the 'quality' or ' condition' of the property," and in effect is no more than a covenant that the lessor has a right to lease the premises hired, and will defend that right on peril of forfeiting his claim for rent.    The law recognizes no other implied covenant in respect to leases that we are aware of, unless it be, in the case of a ready-furnished house or apartment, that it is reasonably fit for immediate use, and even this has been seri-·ously questioned, if not entirely repudiated, as the law of this state.    *Franklin* v. *Brown*, 118 N. Y. 110, 23 N. E. Rep. 126; *Edwards* v. *Railroad Co.*, ·98 N. Y. 248; *Howard* v. *Doolittle*, 3 Duer, 475; *Meeks* v. *Bowerman*, 1 Daly, 99.

On the trial of this action it was admitted that the respondent had given the appellant a lease of the lower floor and basement of the premises No. 17 ·Greenwich avenue, which would not expire until May 1, 1891.    But no attempt was made on appellant's behalf to show that this lease contained either a covenant to repair or keep in repair the premises so hired, or that the adjacent property should remain in the condition it was at the time of the hiring, during the whole or any part of the term.    Nor was it claimed that any deceit was practiced, or false representations made, by the appellant as to the ·character or condition of the premises in question, or of the sufficiency of the ·supporting walls if left to stand by themselves.    Nor were any representations made as to the fitness of the premises for the purposes for which they were let.    Whatever may be argued as to implied covenants, it cannot be claimed that, under such a state of facts, the law of this state will inject into leases a covenant that the landlord will keep in repair the demised premises, or that the adjacent property will remain in the condition in which it was at the time of the letting, when the tenant neglects to have such covenants inserted in them.    On the contrary, Mr. Justice BEARDSLEY in *Cleves* v. *Willoughby*, *supra*, says:  "The maxim *caveat emptor* applies to all property, real, personal, and mixed, and the purchaser generally takes the risk of its quality and ·condition, unless he protects himself by an express agreement on the subject." And this has been reaffirmed with emphasis in *Edwards* v. *Railroad Co.*, *supra*, and more recently in *Franklin* v. *Brown*, *supra*.    Nor is the hard-·ship of such a doctrine in this case so great as it at first appears.    The appellant had occupied these premises for 10 or 12 years previous to the last ·hiring; he, if anybody, should have known whether or not the extension had independent walls, or was merely a lean-to built against the wall of the adjacent property.    We think it clear from the testimony the landlord did not. He had No. 19 surveyed by a competent surveyor before he let the contract to remove the building on it to Mr. Tripler, who reported to him that both 17 and 19 had independent walls, and in making the contract he especially provided that the building and walls of No. 17 should not be disturbed.    We also think that the justice who tried the case was fully justified by the evidence in finding, as he must have done, in rendering judgment for the defendant, that no part of the premises, No. 17, was disturbed by the respondent directly, or that the performance of the contract he made with Tripler would, necessarily,

cause a disturbance of these premises, and in this way inflict an injury on appellant.

All the misapprehension in this case arises from the fact that the respondent owned both lots, and his rights and duties as to each have been confused. Let us suppose that A. owned No. 19, and B. owned No. 17, the lower part of which he had let to C. Now, had A. torn down the walls of his house only, and thus left the broadside of the extension on No. 17 exposed to the weather, because that extension never had any wall of its own, who would have thought of holding A. liable to C. for any injury his furniture might have sustained by reason of such exposure? And why not? Simply because A. owed no duty to C. except to remove his walls carefully so as not to injure C.'s property through negligence. Neither, under the principles of law above stated, would B. have been liable to C., for B. had neither covenanted to keep in repair, nor that the adjacent property should remain as it was at the time of the hiring, and C. had rented the premises, as they were, at his own risk. In the absence of fraud, deceit, false representations, and of any express covenant, we know of no rule of law by which the respondent can be held for damages under such circumstances, simply because he owned both lots; his rights and duties, as far as the different tenants in each were concerned, were in no wise affected thereby.

The only other ground on which respondent could have been held liable in this case was because of some negligence in removing the building on No. 19, whereby appellant's property was injured. But it is a rule of law, so well settled in this state as to need no discussion here, that where a contractor has undertaken the performance of certain specific work in such a way that the owner has no control or authority over the manner of its performance, the owner is not responsible for the contractor's negligence in doing the work. This rule is as applicable to work on real property as on personal. *Goudier* v. *Cormack*, 2 E. D. Smith, 254; *McEnanny* v. *Kyle*, 14 Daly, 268; *Blake* v. *Ferris*, 5 N. Y. 48; *Pack* v. *City of New York*, 8 N. Y. 222; *McCafferty* v. *Railroad Co.*, 61 N. Y. 178. In order to make the owner liable for the negligent acts of another, the relation of master and servant, or principal and agent, must exist between them. The evidence does not establish any such relation between the respondent and Mr. Tripler. On the other hand it shows beyond doubt that Mr. Tripler had sole charge of the work, and the respondent had nothing to do with it. The only exceptions to the last above stated rule which we know of are where the work originally contracted to be none is unlawful in itself, is extremely hazardous, as blasting, (*Buddin* v. *Fortunato*, 10 N. Y. Supp. 115; *Hay* v. *Cohoes Co.*, 2 N. Y. 159; *Hexamer* v. *Webb*, 101 N. Y. 377, 4 N. E. Rep. 755,) or necessarily involves the doing of an injury to another. In such cases the owner cannot be allowed to shift the burden of his own wrong, or the extreme hazard, to the shoulders of his contractor. But taking down an old building is neither unlawful, nor does it involve unusual hazard. The question then is, did the performance of the contract necessarily involve the doing of an injury to the plaintiff? Obviously, if the walls of the two buildings were entirely independent, tearing down one would in no way involve the walls of the other. In *Earl* v. *Beadleston*, 42 N. Y. Super. Ct. 294, it was held in the case of a party-wall which the adjoining owners were bound to keep up, that one of them could not maintain an action against the other, who had employed a contractor to take down his house, which involved the removal of the beams resting in the party-wall, for it was said that this could be done without necessarily weakening the wall.

In this case appellant, and one witness in his behalf, testified that when the rear part of the wall on No. 19 was torn down, it exposed the whole of one side of the extension before mentioned, and that there was no other protection to that part of his premises than the wall so torn down. This is denied both by the respondent and Mr. Tripler, who testify that both buildings had

independent walls, except along a part of the extension, and there the wall torn down was wholly on lot No. 19, and Mr. Tripler testified that the extension in question, next the wall torn down, was protected by a lath and plaster partition, left standing when the other wall was removed, and that there was no opening except one place near the ceiling, which was closed with boards in a short time. It is apparent from the testimony that the extension must have had some kind of support next to No. 19, to permit these boards to be fastened upon it, and to support the roof, which remained intact. On this state of facts, the justice who tried the case rendered his decision in favor of the respondent, and must have found that the work contracted to be done would not necessarily injure the appellant. While the evidence is conflicting, we think there was quite enough given by the respondent to justify the conclusion arrived at. We are satisfied from the evidence that no injury to appellant, nor invasion of his premises, were contemplated by respondent when he made the contract, and that none were necessarily involved in doing the work under it. The judgment should therefore be affirmed, with costs.