(41 Misc. Rep. 368.)

### PEOPLE ex rel. GAFFNEY v. MAYER, Justice.

(Supreme Court, Special Term, New York County.   September, 1903.)

**1. ALDERMAN—INTEREST IN CITY CONTRACT—INFORMATION.**

An information alleged that defendant, while a member of the board of aldermen of the city of New York, contracted with the board of docks for a lease of a city pier to a corporation of which he was president and in which he was stockholder. *Held* insufficient to show him probably guilty of a violation of Laws 1897, p. 535, c. 378, § 1533, forbidding a member of the assembly to become directly or indirectly interested in a city contract.

Certiorari and habeas corpus by the people, on the relation of James E. Gaffney, against Julius M. Mayer, justice of the Court of Special Sessions. Demurrer to the return to the writ of certiorari sustained.

James A. Deering, for relator.

Williams Travers Jerome, Dist. Atty., for respondent.

BISCHOFF, J.   On the 2d day of July, 1903, information was laid before the respondent, acting as magistrate for the county of New York, under section 148 of the Code of Criminal Procedure, by the depositions of Russell Bleecker, Patrick J. Scully, and Charles O'Neill. These depositions purported to charge the relator, James E. Gaffney, of the city of New York, with the commission of a misdemeanor, consisting of a violation of section 1533 of the Greater New York City Charter (Laws 1897, p. 535, c. 378).   On this information the respondent issued a warrant of arrest against relator, and he was apprehended by a peace officer to whom said warrant was given for execution, brought before the magistrate, arraigned, and held under said charge for examination, which was adjourned from time to time, and relator paroled in the custody of his counsel.   Finally, on July 28, 1903, relator waived examination, and was held for trial on the alleged charge set forth in the depositions or information submitted. Prior thereto, and on July 11, 1903, relator, through his counsel, had moved to dismiss the proceedings, and for his discharge on the ground that the facts stated in the depositions or the information laid before the magistrate did not constitute a crime, and on the ground that the said relator was not thereby charged with having such an interest in a contract with the city of New York as was contemplated by section 1533 of the Greater New York Charter.   The magistrate denied the motion so made.   On the day relator was held for trial on the charge he sued out writs of habeas corpus and certiorari, which were duly allowed, directed to the respondent and to Louis Rappolt, the peace officer in whose custody respondent was, for the purpose of determining the cause of relator's detention.   Respondent has duly made his return to these writs, and relator has filed a demurrer to the return to the writ of certiorari, and pending the decision of the issues raised by this demurrer relator has been paroled in the custody of his counsel.

Relator has demurred on five several assignments of grounds, but it is unnecessary to consider these separately and in detail in the dis-

position to be made hereof, as they in substance, though stated in different form, present substantially the same question, and that is whether, under the provisions of the law, the facts stated, if true, constitute a misdemeanor, and, if they do, whether there is sufficient cause shown by the depositions submitted to the committing magistrate to believe relator was guilty of such misdemeanor, for it may be said that, should it be shown herein that a crime or misdemeanor had been committed, and that there is sufficient cause on the information submitted to the magistrate to believe that relator is probably guilty, the demurrer cannot be sustained.

With the quantity, quality, or weight of the evidence submitted before the committing magistrate this court has nothing to do on the present application. In substance it appears, and did appear before the committing magistrate, that prior to July 3, 1901, the relator had been elected, had duly qualified, and was an acting member of the board of aldermen of the city of New York from the Eighteenth Aldermanic District; that on the 3d day of July, 1901, a lease or contract of lease was entered into between the city of New York, acting through its board of docks on the one part, and the New York Contracting & Trucking Company, a corporation organized and existing under the laws of the state of New York, on the other part, and which lease was executed by the relator on behalf of said New York Contracting & Trucking Company as its president, and was thereafter approved by the acting corporation counsel on July 11, 1901. It is contended by respondent that at the time of the execution of said instrument the evidence shows that relator was a director and officer of the New York Contracting & Trucking Company, and that therefrom it is a necessary inference to be drawn that he was also a stockholder and interested within the provisions of the charter invoked, it appearing also by the original certificate of incorporation that he subscribed for five shares of stock. This lease covered the wharfage and cranage of the pier at the foot of West Ninety-Sixth street, North river, borough of Manhattan, county of New York, for the term of 10 years, and provided for renewals thereof; and it appears that the purpose of the corporation was, among other things, the building, constructing of wharfs, piers, docks, pier sheds, sea walls, and doing other kinds of river front and harbor work. The directors for the first year of the corporation, as shown in the certificate thereof, were the relator, John J. Murphy, and Richard Couch, each of whom appears by the certificate to have held five shares of the corporate stock, or at least to have subscribed therefor. The corporation appears to have been incorporated on April 28, 1900, or at least the certificate of incorporation bears date on that day, and was acknowledged on the same day, and relator appears thereby to have been one of the incorporators.

The specific charge in the complaint filed before the committing magistrate was that relator committed, on said 3d day of July, 1901, a misdemeanor, to wit, "a violation of section 1533 of the Greater New York Charter, in that at said time in the county of New York the said defendant, being then and there an alderman of said city, and as such a member of the municipal assembly of said city, and an

officer designated in said section 1533, did knowingly acquire an interest not devolved upon him by any law in a contract then and there made with the city of New York by its board of docks, viz., in the lease above referred to from said city to said private corporation, of which the relator was at said date a stockholder, director, and officer, and that said lease or contract of lease covered and related to property belonging to the city of New York." It may be said that there is no allegation or contention on the part of the respondent that the lease in question was unduly or corruptly procured, or that the rent agreed upon was not just and fair, or that by any act of the constructing company, or relator the city's interests have been injuriously affected, or is it contended that the relator's official duties as councilman in any manner related to the making of the lease in question. The question, therefore, narrowed, as suggested, is purely a technical one of whether the facts stated in the depositions submitted to the committing magistrate, and upon which he issued a warrant of arrest, show that a crime or misdemeanor had been committed, and that there was sufficient cause shown on the information submitted to the magistrate to believe the relator probably to be guilty.

Section 1533 of the Greater New York Charter was as follows at the time of the alleged crime:

"No member of the municipal assembly, head of department, chief of bureau, deputy thereof or clerk therein, or other officer of the corporation, shall be or become, directly or indirectly, interested in or in the performance of any contract, work, or business, or the sale of any article, the expense, price or consideration of which is payable from the city treasury or by any assessment levied by any act or ordinance of the municipal assembly; nor in the purchase or lease of any real estate or other property belonging to or taken by the corporation or which shall be sold for taxes or assessments, or by virtue of legal process at the suit of the said corporation. If any person in this section mentioned shall, during the time for which he was elected or appointed, knowingly acquire an interest in any contract or work with the city, or any department or officer thereof, unless the same shall be devolved upon him by law, he shall, on conviction thereof, forfeit his office, and be punished for a misdemeanor. All such contracts in which any such person is or becomes interested shall, at the option of the comptroller, be forfeited and void."

The relator strenuously contends that the depositions submitted before the magistrate did not establish the existence of the fact that relator was an officer, director, and stockholder of the construction company which made the lease. If this question on the depositions were to be decided upon a case in which a prisoner had been held under final judgment upon conviction, there might be force in the contention of relator; but that is not the case. It is a question of probability, and depends upon the existence of some evidence upon which a finding of probable cause may fairly be predicated; and it seems to me from the facts, not disputed, that relator acknowledged the lease in question, signing the corporate name of the contracting party; that he swore at the time he was the president thereof; that under the certificate of incorporation it appears he was a subscriber to five shares of the stock; that he was one of the incorporators thereof. From these undisputed facts the inference certainly would follow as a probable one that he remained a director and stockholder after the

expiration of the first year of the life of the company, as well as president thereof, and it may be assumed as a fair inference from this evidence, sufficient, at least, upon which to base the jurisdiction of the committing magistrate to hold relator, provided it further appeared that a crime or misdemeanor had been committed within the provisions of section 1533 of the Greater New York Charter; and this leads to the consideration of the vital question in the case at bar, namely, assuming that there was some evidence before the magistrate that the relator was a stockholder, officer, and director of the corporation, that he was at the time an alderman of the city, and while occupying these two positions the lease in question was executed by the corporation with relator acting as president, do these facts constitute a misdemeanor within the section of the Greater New York Charter quoted? The relation of relator to the New York Contracting & Trucking Company as its president and as a director undoubtedly was one simply of agency, and under this relation alone, aside from his being a stockholder, it cannot be argued seriously that relator was within the charter provision invoked, which leaves for our consideration his relation to said corporation as a stockholder only.

It is well to bear in mind some familiar rules of construction in determining this question. The misdemeanor charged is, of course, malum prohibitum, and not malum in se, and as such must be brought directly within the statute, and criminal intent may not be presumed, but must be proved. There is no warrant for invoking judicial construction to extend the statute beyond its plain terms, and unless the crime or misdemeanor charged comes within the words of the provision of the charter invoked, it may not by construction be extended so as to embrace it; or, in other words, a statute which makes penal an act innocent before may not be extended to cases not clearly within its meaning and objects. This raises the question whether, if there be reasonable doubt in the case as to the misdemeanor charged coming within the spirit and the letter of the statute or not, the relator is not entitled to the benefit of such doubt. It would seem that he is entitled to such benefit. If the intentional acquisition of every expected benefit from a contract with the city is deemed to have been within the penal effect of the provisions of the section invoked before its amendment in 1901, then, clearly, every time any member of the municipal government essayed as a passenger to board the car of any of the street railway companies conducting their railways under a franchise from the city, subscribed for the supply of lighting gas or electricity by those likewise operating under municipal consent, or availed himself of the transit conveniences of the licensed cabman or the carriage of the licensed drayman, he subjected himself to the punishment imposed. Will any rationally minded person contend that this is what the Legislature meant? Assuredly not. Yet such must be taken to have been its meaning if nothing more than a stockholder's relation to the corporation having contracted with the city invited the application of the provisions alluded to before the amendment, because that relation implies some general possibility of benefit. Such an interpretation of the charter provision is repugnant to and tortures common sense. Then what was the

interest in the contract with the city the acquisition of which it was intended to prohibit if the charter provisions were not to be restricted to the interest of a party, openly or covertly so, to the contract itself as distinguished from the benefit merely to strangers to the contract thereunder? Who can tell? The charter did not in terms restrict the application of its penal provisions, and we cannot assume that the Legislature intended that its enactment should be carried to the point of atrocious absurdity. Is the relator, in view of this ambiguous state of the charter provision under examination, to be made criminal by the invocation against him of the broadest possible meaning of the language employed and for the commission of an act which in and of itself is untainted with any degree of moral obliquity? Clearly not. The law mercifully and humanely requires that the doubt be resolved in his favor, and that the more reasonable and restricted interpretation of the penal provisions alluded to shall prevail lest the unwary and morally innocent of attempted violation of the law be led into a trap arising from the imperfect expression of legislative intention.

No better illustration can be given of this principle than in the language of Chief Justice Marshall in a leading case before the Supreme Court of the United States (U. S. v. Wiltberger, 5 Wheat. 76, 5 L. Ed. 37), as follows:

"The rule that penal laws are to be construed strictly is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals, and on the plain principle that the power of punishment is vested in the legislative, not in the judicial, department. It is the Legislature, not the court, which is to define a crime and ordain its punishment. It is said that, notwithstanding this rule, the intention of the lawmaker must govern in the construction of penal as well as other statutes. This is true. But this is not a new, independent rule which subverts the old. It is a modification of the ancient maxim, and amounts to this: that though penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the Legislature. This maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases which those words, in their ordinary acceptation, or in the sense in which the Legislature has obviously used them, would comprehend. The intention of the Legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one, indeed, which would justify the court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute, its language must authorize us to say so. It would be dangerous, indeed, to carry the principle that a case which is within the reason or mischief of a statute is within its provisions so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated. If this principle has ever been recognized in expounding criminal law, it has been in cases of considerable irritation, which it would be unsafe to consider as precedents forming a general rule for other cases."

And we are not without express authority on the subject in the Reports of our own courts. In Chase v. N. Y. C. R. R. Co., 26 N. Y. 523, the court, per Marvin, J., says:

"The great, leading rule for the construction of statutes is to ascertain fairly the intention of the Legislature in enacting the statute. In statutes giving a penalty if there be reasonable doubt of the case, made upon the

trial or in the pleadings, coming within the statute, the party of whom the penalty is claimed is to have the benefit of such doubt."

The true purpose is to give effect to the intent of the Legislature as deducible from the language employed, and never to extend the language by implication to cases not within such intent as declared by the words used. Strong v. Stebbins, 5 Cow. 210. And see Verona Central Cheese Co. v. Murtaugh, 50 N. Y. 314.

There seems to be no room for doubt that the Legislature, in amending section 1533 of the Greater City Charter, intended to clear some ambiguous question of construction, otherwise the amendment was useless; and we are not to infer such to be the case. Section 1533, before amendment, and under which relator is charged with the misdemeanor, read:

"No member of the municipal assembly, head of department, chief of bureau, deputy thereof, or clerk therein, or other officer of the corporation shall be or become directly or indirectly interested in or in the performance of any contract, work or business, or the sale of any article," etc.

By the amendment (Laws 1901, p. 632, c. 466) the section is made to read that:

"No member of the municipal assembly, head of department, chief of bureau, deputy thereof, or clerk therein, or other officer of the corporation, shall be or become interested directly or indirectly as contracting party, partner, stockholder or otherwise in the performance of any contract, work or business, or the sale," etc.

If the section as amended had been in force at the time of the alleged misdemeanor, relator would have come directly within its provisions; but it was not then in force in such form, and, to say the least thereof, it certainly was ambiguous as to whether it would embrace the relation of stockholder to a corporation or not.

Assuming, therefore, that there cannot be attributed to the Legislature the doing of a wholly unnecessary or superfluous act in the amending of the charter to take effect on the 1st day of January, 1902, the amendment must be treated as a matter of substance, and to be given effect, and, so considering it, the intent is plain to make the application to stockholders in the future, which necessarily assumes that under the statute as it had stood, within the intent of the Legislature, a mere stockholder was not an interested party. It does not seem to me that the insertion of the word "stockholders" in the amended section was simply to make clear and to remove any doubt without altering the meaning of the clause as it stood. The very fact of this legislative change of itself indicates at least that in the legislative mind the terms first used were doubtful, and open to different constructions, or at least contentions; and if that be so, relator should not have been held. Nor is it hardly reasonable to assume that the amendment of 1901, to take effect on January 1, 1902, was merely in the nature of legislative interpretation or construction of the section as it stood before that time, and only on such view ought the relator to have been held.

I am aware of the fact that distinguished lawyers have taken different views upon the question of whether a mere stockholder is an interested party within the purview of section 1533, p. 535, of the

Greater New York Charter, as it stood before amendment, and that the question might ordinarily present grave ground for debate; but the fact remains that the Legislature has undertaken by its amendment to enumerate stockholders among the class of those subject to the provisions of section 1533 of the Greater New York Charter, and it is but fair to infer that such amendment was made.either because the prior enactment was ambiguous, or because it intended to add to the substance thereof by enacting specifically that stockholders should be liable. Considered in either aspect, the facts before the committing magistrate, in my judgment, did not charge the relator with a crime or misdemeanor; hence the demurrer should be sustained.

Demurrer sustained, with costs.