## In re ALBANESE et al.

District Court, N. D. New York.
Oct. 23, 1930.

Brown, Fraser & Black, of Syracuse, N. Y. (Henry S. Fraser, of Syracuse, N. Y., of counsel), for claimants.

McGowan & Stolz, of Syracuse, N. Y. (Max L. Stolz, of Syracuse, N. Y., of counsel), for trustee.

COOPER, District Judge.

This is a review of the decision of Referee in Bankruptcy Ben Wiles, of Syracuse.

On July 1, 1929, under a conditional sales contract reserving title in the seller until the purchase price was paid, the Heywood-Wakefield Chair Company sold 1,100 stock theater chairs to Michael Albanese, one of the bankrupts, to be installed in his theater at East Syracuse, Onondaga county, N. Y.

The chairs were installed in said theater, called the Roxy Theater, pursuant to plans, specifications, and contract, by men sent by the Heywood-Wakefield Chair Company at its expense. The parties stipulated, and the referee found, that the chairs "rest on and are attached directly to the concrete floor, five inches in thickness, with no intermediate floor covering of any nature, by means of expanding screws through the floor."

The contract, or a copy thereof, was filed in the Onondaga county clerk's office at Syracuse, N. Y., on August 24, 1929, prior to the installation of the chairs in the theater.

The county clerk entered the contract in the book kept by him for conditional sales of goods attached or to be attached to real property. In the column headed "property" the clerk wrote, "Roxie Theater, East Syracuse, N. Y." East Syracuse, where the theater is located and where the bankrupt has always resided, is not a part of the city of Syracuse, but is in the town of De Witt in Onondaga county. No copy of the contract was filed in the town of De Witt.

The conditional vendee having defaulted in the payment of a portion of the purchase price, and having, with his wife, filed petition in bankruptcy, the Heywood-Wakefield Chair Company brought reclamation proceedings against the trustee in bankruptcy for these 1,100 theater chairs.

The referee found that the chairs had become so affixed to the real property as to become a part thereof; were severable therefrom without material injury to the freehold, were covered by section 67 of article 4 of the Personal Property Law of New York; and

that the chair company, having properly filed the copy of contract with notice required by that section, was entitled to possession of the chairs, and so ordered.

The trustee, claiming error on the part of the referee, contends that the vendor and vendee in the contract expressly agreed that said chairs "shall continue to be personal property notwithstanding their attachment to the floor of the building in which they are placed," and that this is controlling on the vendor in the sales contract; that independent thereof the chairs have at all times been personal property; that the vendor having failed to file a copy of the conditional sale contract in the proper office in the town of De Witt as provided in section 65 of the same statute, the reservation of property in its conditional sales contract is void against the trustee in bankruptcy under the 1910 Amendment to section 47 of the Bankruptcy Law (11 USCA § 75).

That the chairs were severable without material injury to the freehold is not questioned. If the chairs are so affixed to the floor as to become a part of the building within the meaning of section 67, the referee is right. The section provides, in part, as follows:

"If the goods are so affixed to realty at the time of a conditional sale or subsequently as to become part thereof but to be severable without material injury to the freehold, the reservation of property shall be void after the goods are so affixed as against subsequent purchasers of the realty for value and without notice of the conditional seller's title, unless the conditional sale contract, or a copy thereof, together with a statement signed by the seller briefly describing the realty and stating that the goods are or are to be affixed thereto, shall be filed before such purchase in the office where a deed of the realty would be recorded or registered to affect such realty."

Section 67 was added to the Personal Property Law of the State of New York by section 2 of chapter 642 of the Laws of 1922. The quoted provision of the section changed the law as to the legal status of certain classes of chattels so affixed to real property as to become a part thereof, but severable therefrom without material injury to the freehold, and overrode the intention of the parties, theretofore controlling at common law, that such goods should remain personal property, because the parties had so agreed. Madfes v. Beverly Development Corp., 251 N. Y. 12, 16, 166 N. E. 787, 788. That court said concerning this provision of section 67:

"It was the legislative purpose that a condition reserving title in the seller, to be found in a conditional sale contract, should no longer have the effect of impressing upon articles, annexed to a building by the purchaser in such a manner as otherwise to have become real estate, the continuing character of personal property. The provision in terms relates to none other than goods 'so affixed to realty at the time of a conditional sale or subsequently as to become part thereof but to be severable without material injury to the freehold."

The purpose of the section is further explained in Kohler Company v. Brasun, 249 N. Y. 224, 227, 164 N. E. 31, 32, in these words:

"This section is designed for a double purpose. It protects buyers of real estate upon which some types of property are attached in such a manner as to render uncertain their character as realty or personalty. Equally, it operates as a protection to the conditional vendor of a fixture. A stove, a pump, a dynamo may be a chattel belonging to the owner of the realty or it may be so firmly fastened to the freehold as to constitute a part of it and yet, by reason of some agreement, may conditionally belong to its original owner. Such doubts respecting the character of this kind of property and its ownership can reasonably be entertained as may require prolonged litigation for their solution. The thing may be realty belonging to the vendor of the land or it may be personalty to which a reserved title may reside in a stranger. The statute informs the vendee of the land concerning his rights and duties. If he searches the office where land titles are recorded, he may find documents describing the fixture, its conditional owner and the circumstances under which it happens to be attached to the realty. If no such documents have been placed on file, the statute assures him that he may confidently purchase the fixture either as part of the realty or as a chattel belonging to the vendor of the realty. If the seller of this personal property files a copy of the conditional bill of sale and the brief statement as directed by the statute, his rights, likewise, are fully guarded. Section 67 provides a fair method for protection to all."

Since there is no measuring rod contained in the statute by which it can be determined when and under what circumstances goods affixed to, but severable from, the realty without material injury thereto, are so affixed to the freehold as to become a part thereof, the question of whether or not these theater chairs were so affixed as to become part of the realty must be otherwise determined.

Since the agreement of the parties that severable goods, however attached, shall remain personalty, no longer controls, the solution of the question of whether the goods are so annexed to realty as to become part thereof would seem to be found in the nature of the articles attached, the kind or character of the structure to which they are attached, and the manner, purpose, and effect of the annexation.

If goods not retaining the character of personalty when attached to realty are of such nature and the manner, purpose, and effect of the annexation are such as to reasonably indicate intention that the annexation shall be continuing and permanent, the goods may reasonably be held to be so affixed to realty as to become a part thereof and included within the meaning of the provision of section 67.

It may be that the quoted provision of section 67 should be construed to cover all severable goods so affixed as to indicate that the annexation shall be continuing and permanent unless they be goods which at the enactment of the section had a recognized legal status as personalty, however affixed to a building, and which should be held not to have been within contemplation of the Legislature in enacting the section.

The definition of "goods" as given in section 61 of the same statute is of little aid, since the term "goods" is used in section 65 relating to conditional contracts of sale of goods not affixed to the realty, as well as in section 67.

The decisions under section 67 throw little light on the question when, or what kind of, goods are so attached to realty as to become a part thereof. Most of the decided cases relate to annexations to realty of articles of such nature and so attached as to retain their previously established character as personalty even though attached in the customary manner.

Gas ranges attached in the ordinary manner to the gas service pipes in an apartment house have since the enactment of section 67 been held to retain their character of personalty and not to have been within the contemplation of the Legislature when section 67 was enacted, despite the annexation to the building. Madfes v. Beverly Development Corporation, supra.

Other cases holding that gas ranges and

stoves attached to the gas service pipes of the building in the ordinary manner retain their character as personalty despite the provision of section 67, are: Alf Holding Corporation v. American Stove Company, 253 N. Y. 450, 171 N. E. 703; Cohen v. 1165 Fulton Avenue Corporation, 251 N. Y. 24, 166 N. E. 792; Lloyds First Mortgage Corp. v. Lombardo, 227 App. Div. 400, 237 N. Y. S. 456.

Electric refrigerator equipment attached in the usual way to the electric wiring system of a building has also been held to retain its character as personalty and not to come within the provisions of section 67. Minett v. Durnheer, 135 Misc. Rep. 259, 238 N. Y. S. 448; Kelvinator Sales Corp. v. Byro Realty Corp., 136 Misc. Rep. 720, 241 N. Y. S. 632.

It will be noted that most of these cases relate to articles of household use easily attached to and detached from some prepared fixture in the building, capable of being easily moved and taken from house to house or apartment to apartment as the family changed its residence.

In these cases the annexation to the realty was so slight and so easily severed and the nature of the article and the manner and object of its annexation were such that the goods annexed could not fairly be held to be in permanent or continuing attachment to the realty so as to become part thereof under the section.

It was because of changed conditions in the large apartment houses in the cities where each apartment is equipped with a gas range, all belonging to the owner of the building and remaining in the apartment for each successive tenant, in place of the single gas range belonging to the tenant and moved by him from house to house as had formerly been the situation, that the dissenting judge in the Madfes Case felt that the time had come to decide that such gas ranges under section 67 had lost their character as personalty and had become part of the realty. The majority of the court felt that a previous controlling decision (Central Union Gas Company v. Browning, 210 N. Y. 10, 103 N. E. 822), made when there were similar conditions existing in large apartment houses, had laid down a rule of property that such goods was exclusively personalty, which had doubtless governed innumerable conditional sales of gas ranges since that decision, and that it was not the province of the court, but of the Legislature, to change a rule so established

and that the Legislature had not intended to include such goods within section 67.

The cases of Creamery Package Company v. Horton, 178 App. Div. 467, 165 N. Y. S. 257, and Craine Silo Company v. Alden, 218 App. Div. 263, 218 N. Y. S. 143, relating to silos and silo material, were decided since the enactment of the section but involved conditional sales contracts made prior to its enactment and are not in point.

No other cases under the section have been cited or found holding goods resembling theater chairs attached to realty to have retained the character of personalty.

A case in closer analogy than any of the foregoing is that of Kohler Co. v. Brasun, 249 N. Y. 224, 164 N. E. 31, supra, where, according to the opinion in the Appellate Division in the same case (222 App. Div. 338, 226 N. Y. S. 60), a power plant was placed in the cellar of a hotel building on a concrete foundation previously existing and fastened thereto by four bolts which extended through the base of the plant. The plant could be removed by unscrewing the bolts and lifting it off of the foundation. The Court of Appeals held that the chattel, having been found by the lower courts to be severable and attached to the realty so as to become a part thereof, came within section 67, despite the express recital in the contract that under no circumstances should the power plant become a part of the realty.

Here the 1,100 chairs were affixed to the concrete floor by expanding screws in a way very similar to the manner in which the power plant in the Kohler Case was affixed to its concrete foundation.

It may be helpful to compare the manner of attachment and severance in the Kohler Case with that of Duntz v. Granger Brewing Company, 41 Misc. Rep. 177, 83 N. Y. S. 957, affirmed without opinion in 184 N. Y. 595, 77 N. E. 1186.

In the Duntz Case the chattels affixed to the brewery company's building constituted a plant for operating its system of manufacturing lager beer and included three glass enameled steel tanks of four rings each with the necessary vacuum pumps, pipes, and fittings and appliances belonging to such a system, and also five 100-barrel glass enameled steel tanks to be used as chip tanks. The different parts of the machinery were connected with each other and with other parts of the building and appurtenances thereto by pipes which could be disconnected by the usual

methods known to steam fitters or other proper mechanics.

This plant and equipment were introduced into the brewery through one side of the brick wall of the building, which was in process of construction and left open to enable the plant equipment to be taken into the building for installation after which the opening in the brick wall was closed. The tanks could be taken apart and removed by sections, but these separate sections could not be taken from the building without enlarging somewhat the openings surrounding the doors or windows. And yet such equipment was held not to have become a part of the realty so as to lose its character of personality. But the ground for the decision was the agreement of the parties that the equipment should remain personalty. Such agreement was at that time controlling under the common law where the chattels did not become an integral part of the building, necessary for its support, and could be removed without practically destroying the things to be moved.

The two cases well illustrate the change in the law made by section 67. Before section 67, the power plant in the Kohler Case would undoubtedly have been held to retain its character as personalty. Since section 67, the beer equipment in the Duntz Case would undoubtedly have been held to have become part of the realty within the meaning of the section.

The Kohler Case is persuasive that these theater chairs were so affixed to the concrete floor as to become a part of the realty unless theater chairs so affixed had, at the enactment of section 67, a recognized legal status as personalty, as did gas ranges.

The cited cases decided before the enactment of section 67 do not give theater chairs any such recognized status as personalty, despite the manner of their annexation such as is impressed on gas ranges and like goods.

The case of Metropolitan Concert Company v. Sperry, 9 N. Y. St. Rep. 342, a decision of the Supreme Court, General Term, in the First Department, filed May 13, 1887, and affirmed in 120 N. Y. 620, 23 N. E. 1152, is one upon which the trustee relies. The decision that theater chairs attached to a floor, apparently of wood, by iron screws 2½ inches in length, remained personalty, was based upon the agreement of the parties that these chairs should remain personal property until paid for, since a chattel mortgage, the equivalent of a reservation of title, was given by the lessee of the theater in which the chairs were placed, to the vendor of the chairs. As

shown, the intention of the parties that goods not so annexed to a building as to be irremovable therefrom without destruction of the chattels or damage to the building was at that time ordinarily controlling under the common law.

The issue in that case, moreover, was not between the vendor and lessee-vendee, but between the vendor and the owner of the theater. Though the chairs were not in the theater at the time of the lease but were purchased by the lessee from the vendor on instruments reserving title in the vendor and installed in the theater in the manner stated during the leasehold period, the lessor-owner of the building claimed as against the vendor that the chairs were part of the realty by virtue of a clause in the lease that all additions, alterations, and improvements made to the premises should remain a part thereof and be surrendered at the termination of the lease. The court held that the provisions of the lease did not prevail over the chattel mortgage and change the character of the chairs from personalty to realty.

The case of Andrews v. Chandler, 27 Ill. App. 103, relates to theater chairs fastened to the floor, presumably of wood, by screws, and the court decided that the chairs remained personalty because the conditional sales contract vendor and vendee had so agreed in the contract. This was but giving effect to the common-law doctrine that the intention of the parties is of paramount importance, but which is now changed by section 67.

No other cases have been cited arising either before or after the enactment of section 67 holding that theater chairs affixed to the floor remain personalty.

Other cases all before section 67 hold such chairs to have become part of the realty. New York Life Insurance Company v. Allison, 107 F. 179 (C. C. A. 2); Gould v. Springer, 206 N. Y. 641, 99 N. E. 149. The foregoing are New York cases.

Other decisions to the same effect are: Forbes v. Howard, 4 R. I. 364; Grewar v. Alloway, 3 Tenn. Ch. 584; Murray v. Bender (C. C. A.) 125 F. 705, 711, 63 L. R. A. 783.

■ A theater is a permanent structure. A theater without seating capacity would be incomplete.

■ Chairs attached and arranged in some such manner as were these chairs were essential to the use of the theater. Considering the character of the building in which the chairs were placed, the chairs themselves, the uses to

which they and the building were to be put, the manner, purpose, and effect of the attachment to the concrete floor by men apparently skilled in such work sent from the vendor's factory, and that prior to this statute such chairs had no recognized status as personalty when attached in like manner to floors of theaters, the better view is that these chairs were so affixed to the realty as to become a part thereof within the meaning of section 67, and it is so held.

Having so held, it is not necessary to decide whether or not the notice filed by the vendor in the county clerk's office complied with the statute, because, under the provisions of that section, the reservations of title under a conditional contract of sale are void for noncompliance with the statute only as to "subsequent purchasers of the realty for value and without notice."

"Purchaser" is defined in the statute to include mortgagee and pledgee. Clearly the trustee is not such a purchaser, mortgagee, or pledgee.

The decision of the referee is therefore affirmed.