MICHAEL GROSZ *against* JAMES L. JACKSON and JAMES PURSSELL *et al.*

(Decided June 5th, 1876.)

Where chairs were furnished to a theatre, of a pattern that had to be made with special reference to the size, shape, and plan of the auditorium of the theatre in which they were to be placed, and were screwed to the floor, as they could not stand alone: *Held*, that they formed a part of the building, and that a mechanic's lien could be filed and enforced against the building by the one furnishing them.

AN appeal from a judgment entered on the report of RICHARD M. HENRY, referee, in favor of Michael Grosz against James Purssell.

The action was instituted to foreclose two mechanics' liens, one filed by Grosz and the other by Jackson, against the Park theatre, the property of Purssell.

Defendant Jackson claimed the benefit of the lien filed by him, and the right to foreclose the same upon the following facts: On the 11th day of March, 1874, defendant Purssell made a contract with the defendant Jackson, by the terms of which he was to furnish chairs for the theatre, at the price of $4 50 per chair. These chairs were of the variety known as the Allen patent opera-house chairs, made according to pattern, and furnished to any one ordering them. They were fastened

to the floor and to each other, but could be changed from one building to another by unscrewing them from the floor. The chairs were completed at the shop, and then taken to the theatre. They were made with special reference to the size, shape, and plan of the auditorium of the theatre.

To the findings of the referee, that defendant Jackson was entitled to have and enforce a lien upon the building for the chairs thus furnished, the appellant duly excepted.

*Arnoux, Ritch & Woodford*, for appellant Purssell.

*A. W. Evarts*, for respondent Jackson.

CHARLES P. DALY, Chief Justice.—In the cases of *Voorhees* v. *McGinnis* (48 N. Y. 278), and in *Potter* v. *Cromwell* (40 N. Y. 287), three tests are referred to as used in determining whether the thing referred to had, by annexation, become part of the freehold or not. 1st. Whether the annexation was of a permanent character. 2d. Its adaptability to the use and enjoyment of the freehold; and 3d. The intention of the parties when it was annexed; and an application of these tests, I think will solve the question presented in this case.

The building in which these seats, or iron chairs, were put up, was constructed as a theatre, and the seats for the audience were as much a part of the theatre as any other portion of the structure. There could be no doubt that the ordinary wooden seats or benches, which were formerly in use in the parquette or pit of a theatre, nailed to the floor, would be regarded as a part of the structure itself. "The shelves, drawers and counter-tables," says Washburn, "fitted in a store, pass with the store as realty" (1 Washburn on Real Property, p. 17, 3d edition). Instead of the ordinary benches for the use of the audience, in the pit or parquette of the theatre, a patent iron chair has come into use during the last sixteen or seventeen years; but the manner in which these iron chairs are put down and adapted for the use of the audience, make them as much a part of the structure as the wooden benches which were formerly nailed to the floor. To adapt these patented seats to the use to which

they are applied, the manufacturer or person who supplies them is furnished with a plan of the floor of the house where the chairs are to be placed; and particularly, as to whether it is a level surface or an inclined plane, as the chairs must be so made and placed that the people can see the performance upon the stage.

The plan of the floor also, according to the testimony in the present case, must necessarily show the radial lines on which the chairs must be placed, as each chair has its own special place, and cannot be put in any other place, generally speaking. They are located on different radii, for chairs erected on one radius cannot be used or set up in a different radius, and the woodwork of the back and seat has to be constructed in reference to the special chair and its location. The chairs are screwed to the floor, for they would not otherwise stand alone if sat upon, and must be screwed down firmly.

The chairs furnished in the present case were screwed to the floor, and were adapted to the position in which they were placed.

The foreman of Jackson Brothers testifies, that he first examined the floor, and made his radius for each circle of chairs that would be required. He made a diagram, showing the position of each chair, how many were required in each radius, and how many could be put in the house. He then made the chairs to fit the diagram, and testified that they had to be made exactly in accordance with the diagram.

It further appears, in the testimony of Mr. Jackson, that a short row of chairs might be taken out by itself, but the row would be sure to break if the taking out were carried too far; that where the chairs are unscrewed from the floor, the seats drop out; that the chairs can be taken down and carried elsewhen in parts, without injury to the building, except the screw holes in the floor, and without any injury to the chairs. In respect to which, it is sufficient to say, in the language of Judge Hunt, in *Voorhees* v. *McGinnis* (*supra*), that the circumstance that the thing may or may not be removed without great injury to the building, or to itself, is not now deemed to be controlling.

Another witness, Schömberg, has somewhat modified the testimony of the other witnesses; but it is not his business to make such chairs or put them up in a theatre; his business being that of a builder of theatrical properties, scenery, and appurtenances of the stage. He testified that there was no occasion, that he knew of, for preparing a diagram according to which the seats are arranged; that he had had chairs of this description changed from one place to another, and that this had been done in several theatres to his knowledge; that chairs of this kind have been taken out of a building when it was reconstructed, and again placed in the same building, which in the mean time had been completely changed in form; that he did not consider the difference of construction as being material to the question of removal; that any one of the chairs in the theatre in controversy could be moved from its position, so as to occupy any other position; that he believed that the seat in the back of any one of these chairs could be used as a seat in the back for any other chair; that the construction of the chair belongs to the mechanic; that the architect determines the gradation or inclination of rise, and the arrangement of the seats in curves or otherwise; that it is the business of the man who furnishes the chairs, to put them up according to the floor, as prepared under the architect's plans; that the architect's plans have reference to the seating capacity of the house, that is, to ascertain how many seats can be put in the place, so that each person can see the stage.

I do not see, however, that the statement of this witness materially affects the question. The wooden benches formerly in use in the auditorium of a theatre, could be taken up and put in another auditorium, with some sawing and adaptation of them to the new position, or one bench might be taken up and placed in the position of another. This would not at all affect the question whether they were or were not fixtures annexed to the freehold when the benches were originally put down. The fact that the structure in the present instance was a theatre; that these chairs were adapted to and put up in the auditorium for the use of the audience, shows that the annexation was as permanent in its character as any other part of the theatre; that

they were adapted to and essential to its use as a theatre ; and that when they were put down, it was clearly the intention of the parties that they were meant to be as much a part of the structure as any other portion of it ; and were indispensable, unless some other mode of seating was adopted, to its use as a theatre.

I think, for these reasons, therefore, that the conclusion of the referee was right, and that the judgment should be affirmed.

ROBINSON and VAN BRUNT, JJ., concurred.

Judgment affirmed.