BENJAMIN W. FRANKLIN, Respondent, *v.* MARY C. BROWN, Appellant.

In an action to recover the last quarter of rent reserved by a lease for one year of a furnished dwelling-house, the answer set up as a counter-claim damages alleged to have been sustained on account of the breach of an implied covenant that said house was fit for immediate and permanent occupation. The referee found that during the term of the lease noxious gases and strong, unhealthy and disagreable odors existed generally and in large quantities throughout the house, making defendant sick and rendering the house unhealthy and unfit for human habitation. That said gases, odors, etc., did not arise in or from any part of said house, but came from adjoining premises. That neither party knew of their existence when the lease was executed. It was not claimed that there was any deceit or false representations to plaintiff as to the condition of the house or its fitness for the purpose for which it was let. It appeared that defendant thoroughly examined the premises before signing the lease, and neither ceased to occupy nor attempted to rescind until the last quarter of the term. *Held,* that defendant's counter-claim was not tenable ; and the fact that personal property was in part the subject of the lease did not affect the question.

The law will not imply a covenant in a lease as to conditions not under the control of the lessor; and with reference to which he and the lessee being ignorant, neither could be supposed to have contracted.

*Smith* v. *Marrable* (11 M. & W. 5); *Wilson* v. *Hatton* (L. R., [2 Exch. Div.] 336), distinguished and questioned.

The lessee of real property must run the risk of its condition, unless he has an express agreement on the part of the lessor in relation thereto.

Reported below (21 J. & S. 474).

(Submitted December 5, 1889; decided December 20, 1889.

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made May 6, 1886, which affirmed a judgment in favor of the plaintiff, entered upon the report of a referee.

This action was brought to recover the rent reserved by a lease of a furnished dwelling-house.

The answer pleaded a counter-claim for damages alleged to have been sustained by the defendant on account of a breach of an implied covenant that said house was fit for immediate and permanent occupation.

The referee found that on the 14th of September, 1883, the parties entered into a written agreement whereby plaintiff leased to the defendant the dwelling-house, known as No. 6 West Seventeenth street in the city of New York, for the term of one year at the annual rental of $3,100, and that the defendant covenanted to pay said sum in equal monthly pay‑ ments, commencing on the first day of November thereafter. He also found due performance on the part of the plaintiff, and a failure to perform on the part of the defendant, who omitted to pay the rent which became due for the months of July, August and September, 1884, the last three months of the term. Upon the request of the defendant the referee further found that said house was leased to her to be used as a private residence; that the furniture therein was a large and important element in determining the amount of rent to be paid; that during the time covered by the lease noxious gases and strong, unhealthy and disagreeable odors " existed gener‑ ally and in very large quantities throughout said furnished dwelling-house," making the defendant sick and rendering the house unhealthy and unfit for human habitation, and that she incurred certain expenses as the immediate and necessary result of occupying such premises. The referee, however, added to these findings that said gases, odors, etc., did not arise in or from any part of said house, but that they came from the adjoin‑ ing premises which were used for a livery stable, and that neither party knew of their existence when the lease was executed.

*John G. Agar*, for appellant. Contracts for the letting and hiring of ready-furnished houses and apartments are con‑ tracts of a mixed nature, partaking partly of a demise of realty, and partly of a contract for the letting and hiring of movable chattels. (1 Addison on Cont. 293, 343, 344; *Harrington* v. *Snyder*, 3 Barb. 381; *Horn* v. *Meakin*, 115 Mass. 330; *Fowler* v. *Locke*, L. R., 7 C. P. 280; *Lyon* v. *Mells*, 5 East. 437; *Steel* v. *S. S. Co.*, 3 App. Cas. 72; Domat L. 1, tit. 4, §§ 3, 8; Digest Lib. 10, tit. 2, 19, § 1; Pothier Louage No. 54; Story on Bailments, § 383; *Clews* v. *Willoughby*, 7 Hill, 88.)

In letting a furnished house for immediate use there is an implied covenant that the thing let should be fit for the use for which it is let. (*Smith v. Marrable*, 11 M. & W. 5; *Sutton v. Temple*, 12 id. 60, 61; *Wilson* v. *Finch*, L. R. [2 Exch. Div.] 336; *Bird* v. *Lord Greville*, 2 B. Div. [1 C. & El.] 317; *Gillhooley* v. *Washington*, 4 N. Y. 222.) Referee erred in refusing to find that defendant did not waive her right to seek damages for breach of said implied covenant by not rescinding or seeking to rescind the contract set forth in the complaint. (*Muller* v. *Eno*, 14 N. Y. 597; *Parks* v. *Morris Co.*, 54 id. 586; *Schwinger* v. *Raymond*, 83 id. 197; *Williams* v. *Vanderbilt*, 28 N. Y. 217; *Miller* v. *Garling*, 12 How. Pr. 203; *Ransom* v. *E. R. Co.*, 15 N. Y. 416; *Curtis* v. *R. R. Co.*, 18 id. 534; *Holyoke* v. *G. T. R. R. Co.*, 48 N. H. 41; *Bennett* v. *Lockwood*, 20 Wend. 223.)

*Delos McCurdy* for respondent. The fact that the plaintiff's furniture remained in the house and was leased with it forms but an incident to the contract and was not on a basis of the contract itself. (*Francis* v. *Cockrell*, L. R. [5 Q. B.] 501; *Carson* v. *Godley*, 26 Penn. St. 111; *Howard* v. *Doolittle*, 3 Duer, 464; *Dutton* v. *Gerrish*, 9 Cush. 89; *Foster* v. *Peyser*, id. 242; *Royce* v. *Guggenheim*, 106 Mass. 201; *Edwards* v. *N. Y. & H. R. R. Co.*, 98 N. Y. 245; *Murray* v. *Albertson*, 50 N. J. L. 167.) There was in this case no implied or express warranty, upon the letting of the house, that it was, or that it would continue to be, fit for the purpose for which it was let. (*Jaffe* v. *Harteau*, 56 N. Y. 398; *Mumford* y. *Brown*, 6 Cow. 475; *Westlake* v. *Degraw*, 25 Wend. 669; *Chadwick* v. *Woodward*, 13 Abb. [N C.] 441; *Coulson* v. *Whiting*, 14 id. 60-67; *Sutphen* v. *Seebass*, id. 68; *Edwards* v. *N. Y. & H. R. R. Co.*, 98 N. Y. 245; *Simons* v. *Seward*, 22 J. & S. 406; *Cleves* v. *Willoughby*, 7 Hill, 88-89; *Edwards* v. *N. Y. & H. R. R. Co.*, 89 N. Y. 249; *Wolf* v. *Kilpatrick*, 101 id. 146-152.) Where the landlord has created no nuisance himself, and none arises from the premises, no liability can be imposed upon him for nuisances created elsewhere by others over whom he has no

control. (*Cohen* v. *Dupont*, 1 Sandf. 266; *Royce* v. *Guggenheim*, 106 Mass. 201; *Pendleton* v. *Dyett*, 4 Cow. 581; *Edwards* v. *N. Y. & H. R. R. Co.*, 98 N. Y. 245; *Wolf* v. *Kilpatrick*, 101 id. 148; *Gilhooley* v. *Washington*, 3 Sandf. 330; 4 N. Y. 217; *Townsend* v. *Gilsey*, 7 Abb. Pr. [N. S.] 59; *Ogilvie* v. *Hull*, 5 Hill, 52; *Egterton* v. *Paige*, 20 N. Y. 281; Wood on Land. & Ten. 801-804; *Mortimer* v. *Brunner*, 6 Bosw. 653-659.) The defendant cannot successfully contend that she had the right to abandon the premises and refuse to pay the rent she had covenanted to pay under chapter 345 of the Laws of 1860. (*Jackson* v. *Suydam*, 54 N. Y. 450; *Vann* v. *Rouse*, 94 id. 401.

VANN, J. It is not claimed that any deceit was practiced or false representations made by the plaintiff as to the condition of the house in question, or its fitness for the purpose for which it was let. The defendant thoroughly examined the premises before she signed the lease and she neither ceased to occupy nor attempted to rescind until the last quarter of the term. Neither party knew of the existence of the offensive odors when the contract was made. They were not caused by the landlord and did not originate upon his premises, but came from an adjoining tenement. The lease contained no covenant to repair or to keep in repair, and no express covenant that the house was fit to live in. The defendant, however, contends that as the demise was of a furnished house for immediate use as a residence, there was an implied covenant that it was reasonably fit for habitation. It is not open to discussion in this state that a lease of real property only, contains no implied covenant of this character and that in the absence of an express covenant, unless there has been fraud, deceit or wrong-doing on the part of the landlord, the tenant is without remedy even if the demised premises are unfit for occupation. (*Witty* v. *Matthews*, 52 N. Y. 512; *Jaffe* v. *Harteau*, 56 N. Y. 398; *Edwards* v. *N. Y. & H. R. R. Co.* 98 N. Y. 245; *Cleves* v. *Willoughby*, 7 Hill, 83; *Mumford* v. *Brown*, 6 Cow. 475; *Westlake* v. *DeGraw*, 25

Wend. 669; Taylor's Landlord and Tenant [8th ed.], § 382; Wood's Landlord and Tenant, § 379.)

But it is urged that the letting of household goods for immediate use raises an implied warranty that they are reasonably fit for the purpose and that when the letting includes a house furnished with such goods, the warranty extends to the place where they are to be used. This position is supported by the noted English case of *Smith* v. *Marrable* (11 M. & W. 5), which holds that when a furnished house is let for temporary residence at a watering place, there is an implied condition that it is in a fit state to be habited and that the tenant is entitled to quit upon discovering that it is greatly infested with bugs. This case has been frequently discussed and occasionally criticised. It was decided in 1843, yet during that year it was distinguished and questioned by two later decisions of the same court. (*Sutton* v. *Temple*, 12 Mees. & Wels. 52; *Hart* v. *Windsor*, id. 68.) It was approved and followed in 1877 by *Wilson* v. *Hatton* [L. R.] 2 Exch. Div.] 336), in which, however, there was an important fact that did not appear in the earlier case, as before the lease was signed there was a representation made in behalf of the landlord that she believed "the drainage to be in perfect order," whereas, it was in fact defective and the contract was promptly rescinded on this account. The principle that there is an implied condition or covenant in a lease that the property is reasonably fit for the purpose for which it was let, as laid down in *Smith* v. *Marrable*, has been frequently questioned by the courts of this country, and has never been adopted as the law of this state. (*Edwards* v. *N. Y. & H. R. R. Co.* 98 N. Y. 248; *Howard* v. *Doolittle*, 3 Duer, 475; *Carson* v. *Godley*, 26 Penn. St. 117; *Dutton* v. *Gerrish*, 9 Cush. 89; *Chadwick* v. *Woodward*, 13 Abb. [N. C.] 441; *Coulson* v. *Whiting*, 14 id. 60; *Sutphen* v. *Seebass*, id. 67; *Meeks* v. *Bowerman*, 1 Daly 99.) We have been referred to no decision of this court involving the application of that principle to the lease of a ready furnished house and it is not necessary to now pass upon the question because the case under consideration differs

from the English cases, above mentioned, in two significant particulars: 1st. It involves a lease for the ordinary period of one year, instead of a few weeks or months during the fashionable season. 2nd. The cause of complaint did not originate upon the leased premises, was not under the control of the lessor, and was not owing to his wrongful act or default. It was simply a nuisance arising in the neighborhood, but neither caused nor increased by the house in question. Hence we are not called upon in this case to decide whether a lease of a furnished dwelling contains an implied covenant against inherent defects either in the house or in the furniture therein, but simply whether the lease under discussion contains an implied covenant against external defects, which originated upon the premises of a stranger and were unknown to the lessor when he entered into the contract.

It is uniformly held in this state that the lessee of real property must run the risk of its condition, unless he has an express agreement on the part of the lessor covering that subject. As was said by the learned General Term when deciding this case: "The tenant hires at his peril and a rule similar to that of *caveat emptor* applies and throws on the lessee the responsibility of examining as to the existence of defects in the premises and of providing against their ill effects."

In *Cleves* v. *Willoughby,* (7 Hill 83, 86) Mr. Justice Beardsley speaking for the court said: "The defendant offered to show that the house was altogether unfit for occupation and wholly untenantable. The principle on which this offer was made, however, cannot, I think, be maintained. There is no such implied warranty on the part of the lessor of a dwelling house as the offer assumes. It is quite unnecessary to look at the common law doctrine as to implied covenants and warranties or to its modification by statute. (3 R. S. 594). That doctrine has a very limited application for any purpose to a lease for years and in every case has reference to the title and not to the quality or condition of the property. The maxim *caveat emptor* applies to the transfer of all property, real, personal and mixed and the purchaser generally takes the risk of its

quality and condition, unless he protects himself by an express agreement on the subject."

In *O'Brien* v. *Capwell*, (59 Barb. 504.) the court declared that "as between landlord and tenant   *   *   *   where there is no fraud, false representations or deceit and in the absence of an express warranty or covenant to repair, there is no implied covenant that the demised premises are suitable or fit for occupation, or for the particular use which the tenant intends to make of them, or that they are in a safe condition for use."

In *Edwards* v. *N. Y. & H. R. R. Co.* (98 N. Y. 249), it was said in behalf of this court: "If a landlord lets premises and agrees to keep them in repair and he fails to do so, in consequence of which anyone lawfully upon the premises suffers injury, he is responsible for his own negligence to the party injured.   *   *   If he creates a nuisance upon his premises and then demises them, he remains liable for the consequences of the nuisance as the creator thereof.   *   *   But where the landlord has created no nuisance and is guilty of no willful wrong or fraud, or culpable negligence, no case can be found imposing any liability upon him for any injury suffered by any person occupying or going upon the premises during the the term of the demise and there is no distinction stated in any authority between cases of a demise of dwelling-houses and of buildings to be used for public purposes. The responsibility of the landlord is the same in all cases. If guilty of negligence or other *delictum* which leads directly to the accident and wrong complained of, he is liable; if not so guilty, no liability attaches to him."

These quotations illustrate the strictness with which the courts have refused to imply covenants on the part of the lessor as to conditions under his control. What sound reason then is there for claiming that the law will imply a covenant as to conditions not under his control and with reference to which neither lessor nor lessee can reasonably be supposed to have contracted, as they knew nothing about them? The fact that personal property was in part the subject of the lease can have

no bearing upon this question, because neither the furniture, nor the place provided for its use, was the cause of the unpleasant odors. They were not a part of the leased property, either real or personal, but were independent of it in origin and accidental in their effect. If smoke from a neighboring manufactory had blown through the windows, or gas had escaped from a leaky main in the street and entered the house, could the lessee have abandoned the premises, or have called upon the lessor to respond in damages? If any nuisance had existed in the vicinity without the landlord's agency or knowledge, but which materially lessened the value of the lease, upon whom would the loss fall? These questions suggest the danger of departing from the established rule as to implied covenants with reference to the condition of leased real property, simply because personal property is included in the lease. The furniture was not the basis of the contract, but a mere incident, and in law the rent is deemed to issue out of the realty. (Wood's Landlord and Tenant, [2d ed.] vol. 1, p. 128; *Newman* v. *Anderton*, 2 B. & P. [N. R.] 224; *Emott's Case*, Dyer. 212 b.) The difficulty is still more serious when the effort is made to extend the contract of the lessor, by implication only, to causes having only an accidental connection with the property leased, whether real or personal.

We do not think that there was any covenant in the lease in question, implied either by common law or from the acts or relations of the parties, that extended to the grievance of which the defendant complains.

The judgment should, therefore, be affirmed with costs.

All concur.

Judgment affirmed.