GEORGE J. GOULD et al., as Executors and Trustees under the Will of JAY GOULD, Deceased, Respondents, v. JOHN H. SPRINGER, Appellant.

#### Lease — obligation to repair.

On examination of the special provisions of a lease, *held*, that an obligation to repair during the term was not modified or cut down by an obligation therein contained to surrender at the end of the term in good condition, reasonable use and wear excepted.

*Gould* v. *Springer*, 140 App. Div. 932, affirmed.

(Submitted May 9, 1912; decided June 18, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered November 21, 1910, affirming a judgment in favor of plaintiffs entered upon a verdict directed by the court.

On the sixth of January, 1908, this action was commenced by the owners of a building known as the Grand Opera House in the city of New York, to recover dam-

ages from their lessee for the alleged breach by him of certain covenants in the lease. The covenants regarded by the parties as material are as follows:

" 10. And it is expressly agreed that should the Fire, Building or Health Departments, or any other constituted authority of the City or State of New York, make any order or direction as to said premises or the means of entrance to or exit from the same and if said order shall be obeyed by the parties of the first part (lessors) the delay necessarily caused in fulfilling the same and any hindrance occasioned in obeying the same, shall not affect or impair the rent to be paid hereunder, provided, however, that the improvements or alterations required shall be made as promptly as reasonably can be done by the parties of the first part or their representatives.

"11. A Schedule of the Scenery, Wardrobe, Properties, Tools and Appurtenances, owned by the parties of the first part on the First day of August, 1900, and upon the Theatre premises, shall be made on or before the fifteenth day of August, 1900, and signed by the party of the second part and the Agent of the parties of the first part and annexed to and form part of this Lease; the party of the second part shall have the right to the use of said articles as per Schedule, during the term of this Lease and shall take good care thereof and keep the same in good and proper repair and he shall, at the end of the term, surrender and deliver up each and all the articles specified in said Schedule to the parties of the first part in as good state and condition as the same are at the commencement of the term, reasonable use and wear thereof excepted.

" 18. And the said party of the second part (lessee) hereby further covenants to conform to all requirements and orders of and from the Corporation of the City of New York, in its several Departments, applicable to said premises under penalty of damages, provided, however, it does not include any alterations or improvements to the said premises.

" 19. The Scenery, Fixtures and Appurtenances and

any alterations and improvements to them or other parts of the demised property shall belong to the parties of the first part at the end of the term of this Lease.

"22. The said party of the second part hereby agrees to yield up and deliver to the parties of the first part or their representatives, the said premises and the furniture and appurtenances thereof and the Scenery, Wardrobe, Properties and Appurtenances thereof, the use whereof is hereby granted, at the end or other sooner determination of the term hereby granted in as good state and condition as the same are at the commencement of the term of this Lease, reasonable use and wear thereof and damages by fire only excepted.

"26. It is also expressly agreed by and between the parties hereto that the party of the second part hereby obligates himself to make all repairs in every part of said Theatre at his own cost and expense."

On the 16th of February, 1907, while the lease, which had been renewed once under an option for the term of five years, was still in force and had three years to run, the board of health served a notice upon the lessee requiring "that the broken, loose and dangerous chairs in the orchestra circle (first floor) and in the balcony (second floor) be properly repaired and made safe; that all torn and unclean carpets be removed from the floor and stairs in the balcony on the second floor."

On the 21st of March, 1907, the defendant having failed to comply with such notice in any respect, the board of health served a notice on the lessors requiring them to comply with section ten of the Sanitary Code in the following respects: "That the broken and defective chairs in the orchestra circle (first floor) and in the balcony (second floor) be removed and replaced by perfect chairs; that all torn and filthy carpets be removed from the floors and stairs of the balcony on the second floor." The notice called attention to sections 1172 and 1222 of the city charter making a violation of the Code a misdemeanor and subjecting the person responsible therefor to arrest and penalties. The defend-

ant was duly notified of these requirements of the board of health and that the plaintiffs had been notified by the corporation counsel that unless the matter was attended to at once it would be laid before the grand jury and that it was necessary to act immediately. The plaintiffs also gave notice that as the defendant had already refused to make the repairs the plaintiffs would make them and look to him for reimbursement. He did not consent to pay for the repairs, but insisted that they should be made at the expense of the lessors. Each party claimed that compliance with the order was the exclusive duty of the other. Thereupon the plaintiffs replaced 248 chairs and repaired 1,044 at an expense of $3,204. They also removed the torn and filthy carpets and replaced them with new ones at an expense of $532. They sold some broken and defective chairs, which were removed, for $130, and after crediting that amount, brought this action to recover the sum of $3,606, the balance alleged to be due.

The defendant in his answer after admitting the most of the facts alleged in the complaint, denied his liability and as a counterclaim pleaded that by reason of the course of the plaintiffs in making certain structural changes in the building required by the city authorities in the year 1904, or during the first term of the lease, he was unable to give performances in the theatre on six days and that he thereby sustained damages in the sum of $2,416.93.

Upon the trial it appeared that the chairs and carpets in question were badly worn by use nearly every night of the season for several years. At the close of the evidence, after taking time for reflection, the court dismissed the counterclaim upon the ground that there was no evidence of want of reasonable promptness in doing the work in 1904, during the first term of the lease. It also dismissed so much of the cause of action alleged in the complaint as related to compensation for the new carpets and new chairs. As to the remainder of the claim for repairs to 1,044 chairs both counsel agreed to

submit it to the court to pass upon as a question of fact and law, and thereupon a verdict was directed in favor of the plaintiffs for the sum of $2,317.68, being the cost of such repairs and interest. Upon appeal by the defendant only to the Appellate Division the judgment entered accordingly was unanimously affirmed, and the defendant thereupon appealed to this court.

*A. J. Dittenhoefer* and *Dudley F. Phelps* for appellant.

*David H. Taylor* and *Charles W. Coleman* for respondents.

VANN, J.  No recovery was permitted for the expense of furnishing new carpets or new chairs, but the verdict was confined to the reasonable cost of repairing certain old chairs and interest on the amount. By the consent of both parties this question was submitted to the court for determination as one of fact and law, and the verdict directed under these circumstances decided all questions of fact involved in favor of the plaintiffs. It was, therefore, found that the chairs in question were repaired within the meaning of the lease, and that what was done to them was neither an alteration nor an improvement to the premises within the meaning of the eighteenth clause.

There was evidence tending to show that while all the chairs were in good order at the commencement of the lease, some of the frames were afterward broken; others had become loose and "wobbly" from the need of a bolt, nut or pivot; the plush covering the seats in many cases was torn, worn, soiled and unsanitary; the tow filling had become broken into fine stuff, dirty, dusty and matted, and all the chairs covered by the verdict needed repairs of some kind. None of these chairs were replaced, but the frames were repaired and the seats were reupholstered.

Chairs so made as to conform to the plan and shape of a theatre, fastened to the floor and used for no purpose

except to seat the audience, are fixtures attached to the realty. The old theory which made physical annexation the sole test has been expanded so as to include intention, use and adaptability. This seems to be conceded by both parties and the concession is in accord with the authorities. (*Grosz* v. *Jackson*, 6 Daly, 463; *Rieser* v. *Commeau*, 129 App. Div. 490, 493; *N. Y. Life Ins. Co.* v. *Allison*, 107 Fed. Rep. 179; *Potter* v. *Cromwell*, 40 N. Y. 287; *Voorhees* v. *McGinnis*, 48 N. Y. 278.) The question is usually a mixed one of fact and law, and according to the evidence the court could have found, and is presumed to have found, that the chairs which were repaired were an indispensable part of the theatre and that they came within the provisions of the eighteenth and the twenty-sixth clauses of the lease. Unlike the scenery, wardrobe, properties, etc., mentioned in the eleventh clause, the chairs were not mentioned at all in the lease, but passed only as part of the building itself, which was leased as the Grand Opera House.

The obligation to repair during the term was not modified or cut down by the obligation to surrender at the end of the term in good condition, reasonable use and wear excepted. (*Lockrow* v. *Horgan*, 58 N. Y. 635; *Kling* v. *Dress*, 5 Robt. 521.) Even if the two clauses should be read together, the tenant would rest under the duty imposed by both, and hence required to keep as well as to leave the chairs in repair. (*Bushwick Realty Co* v. *Sanitary Fire Proofing and Contracting Co.*, 129 App. Div. 533, and cases cited.)

It is provided by the tenth clause of the lease that the lessors shall not be liable for the delay necessarily caused by fulfilling the orders of the fire, building or health departments and that "any hindrance occasioned in obeying the same shall not affect or impair the rent to be paid," provided the improvements or alterations required should be made as promptly as was reasonable under the circumstances. As between the lessors and the lessee no active obligation was placed on the former to comply with the orders of the city departments. If they did comply,

however, they were relieved from liability if they acted with reasonable promptness.

On the 19th of January, 1904, while the first term of the lease was in force, the fire, building and health departments united in serving a notice on the lessee requiring repairs as well as alterations relating to the means of exit from the theatre and certain appliances to prevent fire. These requirements were fifteen in number and some of them were so comprehensive as to call for extensive work. On the 4th of February following the commissioner of health ordered that the theatre be closed on the ground that it was " in a condition detrimental to health and dangerous to life, * * * until such time as the dangerous conditions are removed." It remained closed until the tenth of the same month, when it was allowed to open again. The rent was paid during this period and the lessee was prevented from making money by giving entertainments and was compelled to refund money for tickets sold in advance. Some of the requirements of the public authorities were complied with by the lessors and others by the lessee, the former paying for the alterations and the latter for the repairs. Work was done by each party both before and after the theatre was closed, the mechanics of both working side by side and some of the time day and night. No claim for damages was made by the defendant until this action was commenced four years later.

The rights and obligations of the parties depend on the lease. There was no covenant on the part of the lessors to make repairs of any character, and, hence, as between themselves and the lessee they were under no obligation to comply with the order made in 1904. (*Franklin* v. *Brown*, 118 N. Y. 110, 113; *Witty* v. *Matthews*, 52 N. Y. 512, 514; *Daly* v. *Wise*, 132 N. Y. 306.) While they might have been subject to an action for a penalty brought by the city that was no concern of the lessee and gave him no right to compel action by the lessors. Even if non-compliance should result in the closing of the theatre, the lessee would have no remedy against the

lessors, for he had failed to protect himself against such a contingency by an appropriate covenant. After the order was served there was no agreement on the part of the lessors to comply therewith, and, hence, the counter-claim can be supported only by proof that the landlords volunteered to comply with the order either in whole or in part but failed to make the improvements or alterations they assumed to make " as promptly as reasonably could be done " after they undertook the work. We think, as the trial court held, that there was no evidence to "justify the jury in finding that the doing of the improvements or alterations was unreasonably delayed." It was not shown that the lessors could have commenced the work they assumed to do any sooner than they did, and as soon as it was commenced it was continued to completion as rapidly as possible. There was no evidence of negligence or unnecessary delay during the progress of the work. The closing of the theatre was owing as much to non-performance by the lessee of what he was required to do as to non-performance of what the lessee claims the lessors were required to do. Although years had passed since the damages, as alleged in the counter-claim, were sustained before the action was commenced, the lessee had not made any complaint nor presented any claim to the lessors. He did not even assert a right to damages in his original answer served while he was negotiating for a new lease. Upon failing to secure another lease, however, as he testified, he "put in the counterclaim " by an amended answer. We think that the counterclaim was properly dismissed.

The judgment should be affirmed, with costs.

CULLEN, Ch. J., GRAY, HAIGHT, WERNER, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment affirmed.