## WARRIN v. HAVERTY.

(Supreme Court, Appellate Division, First Department.  December 31, 1913.)

1. LANDLORD AND TENANT (§ 152*)—COVENANTS—CONSTRUCTION.

   Where a lease required the tenant to comply with all of the require-ments of the board of health and other municipal authorities and to sur-render the premises at the end of the term in as good condition as rea-sonable use and wear would permit, it did not obligate the tenant to build a new wall to take the place of a defective one which was ordered removed by the municipal authorities and to repair the skylight, chim-neys, and coping on the roof.

   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 152, 538–543, 545–549, 551–557; Dec. Dig. § 152.*]

2. LANDLORD AND TENANT (§ 187*)—TERMS FOR YEARS—RENT.

   Under Real Property Law (Consol. Laws 1909, c. 50) § 227, providing that, where any demised building is destroyed or injured so as to become untenantable, the lessee or occupant may quit and surrender possession without liability for subsequent rent, a tenant of a building, one wall of which had to be torn down and rebuilt in obedience to the orders of the local board of health, is entitled to surrender the premises, and, having done so, is not liable for further rent.

   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 770–775; Dec. Dig. § 187.*]

3. LANDLORD AND TENANT (§ 233*)—ACTIONS FOR RENT—JURY QUESTION.

   In an action for rent, the question of the tenant's surrender of the premises by agreement *held* for the jury.

   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 49, 940–944; Dec. Dig. § 233.*]

4. LANDLORD AND TENANT (§ 231*)—ACTIONS FOR RENT—EVIDENCE.

   In an action for rent, evidence that the landlord's general agent re-quested the keys and took possession, accepting the surrender and re-leasing the tenant from further obligation to pay rent, is admissible to show a surrender; the authority of the agent being a question of fact to be established as any other fact.

   [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 926–934; Dec. Dig. § 231.*]

Appeal from Trial Term, New York County.

Action by Marshall L. Warrin against Catherine Haverty, as ad-ministratrix, etc.  From a judgment for plaintiff and an order de-nying a new trial, defendant appeals.  Reversed and remanded.

See, also, 149 App. Div. 564, 133 N. Y. Supp. 959.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, CLARKE, and SCOTT, JJ.

John W. Browne, of New York City, for appellant.

Henry de Forest Baldwin, of New York City, for respondent.

McLAUGHLIN, J.  The plaintiff leased to the defendant's intes-tate, at an annual rental of $2,600, a building in the city of New York for a term of three years, commencing May 1, 1906, but in Septem-ber, 1907, the term was extended so as to end May 1, 1912.  The lease was in writing and contained covenants that the tenant would "comply with all the requirements of the board of health, municipal authorities, and police and fire departments of the city of New York,"

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rev'r Indexes

and at the expiration of the term he would "quit and surrender the premises hereby demised in as good state and condition as reasonable use and wear thereof will permit, damages by the elements excepted." The intestate died in January, 1909, and the plaintiff, as his administratrix, continued in possession of the demised premises and paid the rent therefor until May, 1910. On the 23d of April, 1910, the board of health of the city of New York ordered the plaintiff to repair the skylight, chimneys, and coping on the roof of the building and to do certain specified plumbing; and on the 28th of April the bureau of buildings ordered him to repair the walls, especially the rear one, so as to remedy a bulge therein. After these orders had been served, plaintiff demanded that the defendant make these repairs, insisting that the covenants contained in the lease above referred to legally obligated her to do so. She refused to make them and tendered surrender of possession, which plaintiff declined to accept. At this time a subtenant of the defendant was in possession of the building, but on the 1st of May, 1910, he moved therefrom, and it has since remained vacant. Thereafter the plaintiff entered into possession and complied with the orders by making the repairs therein specified. He brings this action to recover the expense incurred, including a survey, and also for the rent stipulated in the lease for the months of May to September, 1910, both inclusive. The answer denied the material allegations of the complaint upon which a recovery was predicated and set up, as affirmative defenses, eviction, a counterclaim for damages by reason thereof, and a surrender of possession and acceptance of same by plaintiff. At the close of the trial the court dismissed the counterclaim and directed a verdict for the plaintiff for the cost of the repairs and survey, together with the rent for the months above stated. From the judgment entered thereon, defendant appeals.

[1] I am of the opinion that the court erred in holding that the defendant was obligated under the lease to make the repairs, or that she was liable for the expense incurred by plaintiff in doing so. The building was of brick, 25 feet in width and 4 stories high. The repairs directed were extensive. They consisted in taking down the rear wall and replacing it with a new one; part of one of the side walls had to be rebuilt; and the front wall had to be anchored to the floor beams with star anchors, to keep it from bulging. The changes thus made were structural in their nature. They went, in a large measure, to a reconstruction of the building itself and could not have been contemplated by the parties when the lease was made. When the tenant agreed to comply with all the rules, regulations, and ordinances of the various city departments, it is unreasonable to suppose that either of the parties had in mind the tearing down of one of the walls and constructing a new one in its place any more than they had the tearing down of the entire building and putting up a new one. Leases, like other contracts, are to receive a reasonable construction, one that will carry out the intention of the parties to them. May v. Gillis, 169 N. Y. 330, 62 N. E. 385; Gillet v. Bank of America, 160 N. Y. 549, 55 N. E. 292. Thus it has been held that an ordinary covenant to keep premises "generally in good repair" does not include the restoration

of a portion of a building which has become so dilapidated that it cannot be repaired. Street v. Central Brewing Co., 101 App. Div. 3, 91 N. Y. Supp. 547; May v. Gillis, supra. In City of New York v. United States Trust Co., 116 App. Div. 349, 101 N. Y. Supp. 574, this court held that, under a lease which contained a clause quite similar to the one here under consideration, a tenant was not obligated to remove, at his own expense, a stoop which encroached upon the street; that its removal was an alteration of the building and this was not contemplated by the parties when the lease was made.

It is true this court held in Herald Square Realty Co. v. Saks, 157 App. Div. 566, 142 N. Y. Supp. 808, and Morrissy v. Rhinelander R. E. Co., 158 App. Div. 533, 143 N. Y. Supp. 826, that tenants were obliged, under clauses in leases somewhat similar to this, to remove show windows which encroached upon the street; but in those cases the windows were public nuisances and had been erected either by tenants or for their benefit.

In Markham v. Stevenson Brewing Co., 104 App. Div. 420, 93 N. Y. Supp. 684, an authority relied upon by the court below in directing the verdict, a tenant was required to pay for certain changes which had been ordered by the authorities of the city of New York; but the decision in that case was based upon a covenant of the tenant to keep the building in repair, while in the present case there is no such covenant.

It seems to me, therefore, that the court should have held that the defendant was under no obligation to make the repairs nor to pay the expense incurred by the plaintiff in doing so.

[2] I am also of the opinion that the court erred in directing a verdict for the plaintiff for the rent. The statute provides (section 227, Real Property Law [Consol. Laws 1909, c. 50]) that:

"Where any building which is leased or occupied, is destroyed or so injured by the elements, or any other cause, as to be untenantable, and unfit for occupancy, and no express agreement to the contrary has been made in writing, the lessee or occupant may, if the destruction or injury occurred without his fault or neglect, quit and surrender possession of the leasehold premises, and of the land so leased or occupied; and he is not liable to pay to the lessor or owner, rent for the time subsequent to the surrender."

Here this building must have been untenantable during the time the repairs were being made, as it was when the defendant and her subtenant left it. The facts, it seems to me, are sufficient to bring the case within the meaning of the statute justifying a surrender. Tallman v. Murphy, 120 N. Y. 345, 24 N. E. 716; Floyd-Jones v. Schaan, 129 App. Div. 82, 113 N. Y. Supp. 472, appeal dismissed 203 N. Y. 568, 96 N. E. 430; Meserole v. Sinn, 34 App. Div. 33, 53 N. Y. Supp. 1072, affirmed sub nom. Meserole v. Hoyt, 161 N. Y. 59, 55 N. E. 274. All that the statute requires in this respect is that the injury shall be of a physical nature and that the premises are thereby rendered untenantable and unfit for occupancy, and under the facts here proved this was a question for the jury.

[3, 4] A question was also presented which should have been submitted to the jury, viz., whether there had not been a surrender by

agreement, express or implied, between the parties. After the building had been vacated by defendant's subtenant, the plaintiff's agent obtained from defendant the keys to the building and workmen entered thereon and for a period of about six weeks occupied several feet in the rear of the building in erecting the new wall, also considerable space along the side wall, which prevented the building, or a portion of it, being used for the purpose for which it was leased. The front entrance to the office was also boarded up and the agent retained the keys, without apparently giving the defendant any opportunity to use the building at all. The defendant sought to prove an oral agreement with plaintiff's agent to the effect that he, some time after the work had been commenced, accepted a surrender and released defendant from all further obligations to pay rent. The court, however, excluded the testimony on the ground that the agent did not have authority to bind the plaintiff by such agreement. I think the testimony bearing on this subject should have been admitted. Whether or not the agent had such authority was a question of fact. He had general charge of the building for the owner. He prepared the lease in question, and without consultation with the owner, and was "exclusively the managing agent" with reference to the building, not only as to leasing it, but as to repairs to be made.

As to the counterclaim, it was properly dismissed since the defendant did not offer any proof as to damages sustained.

The judgment and order appealed from, therefore, are reversed, and a new trial ordered, with costs to appellant to abide event.

INGRAHAM, P. J., and LAUGHLIN and SCOTT, JJ., concur. CLARKE, J., concurs in result.