## YOUNGER v. CAMPBELL.

### HARBURGER v. SAME.

(Municipal Court of City of New York, Borough of Manhattan, Ninth District. April 22, 1916.)

1. LANDLORD AND TENANT ⬅➡152(1)—REPAIRS.

At common law neither the landlord nor the tenant, as between themselves, was under any contractual duty to make repairs to the demised premises.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 538, 546, 554; Dec. Dig. ⬅➡152(1).]

2. LANDLORD AND TENANT ⬅➡125(2)—TENANTABLE CONDITION.

At common law there was no implied warranty, in the absence of fraud, that the premises were reasonably fit for the purpose for which they were hired, or that they were even tenantable.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 442, 443; Dec. Dig. ⬅➡125(2).]

3. LANDLORD AND TENANT ⬅➡187(1)—RENT—EVICTION BY LAW.

In an action for rent, it is not a defense, under Real Property Law (Consol. Laws, c. 50) § 227, providing for release from rent liability by untenantable condition from destruction or injury of premises, that the premises were vacated pursuant to direction of a municipal department because of noncompliance with its orders, where the lease does not obligate the landlord to comply with such orders.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 770, 771, 774, 775; Dec. Dig. ⬅➡187(1).]

Separate actions by one Younger and by one Harburger against one Campbell. Judgments for plaintiffs.

S. A. Langfur, of New York City, for plaintiffs.
R. K. Brown, of New York City, for defendant.

PRINCE, J. These actions were tried as one. They involve substantially the same facts and principles of law.

Both actions are brought to recover rent for the month of February, 1916, by the respective owners of the lodging houses Nos. 354 and 358 Bowery, New York City, against the same defendant, who hired the entire former building, and the whole of the latter building, excepting the store on the ground floor, by written leases executed April 11, 1911. The leases were for a term of five years commencing May 1, 1911.

The defense in both actions is eviction, and is predicated upon the

---

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

conceded fact that on January 22, 1916, the fire commissioner, acting upon the initiative of the bureau of fire prevention in this city, and in pursuance of an order of the Supreme Court, directed that the demised premises be vacated because of the noncompliance with certain orders affecting the premises, made by the fire prevention bureau, and that they remain vacant "until the said orders of the fire commissioner are complied with." The premises were vacated accordingly.

Both leases provide that the demised premises shall be used only for the purposes of a lodging house, and that the tenant shall "make, at his own cost and expense, all repairs of every nature, in and outside of the demised premises," and shall "comply with all statutes, ordinances, rules, orders, and regulations of the federal, state, and city government, and of any and all their departments and bureaus, applicable to said premises, for the correction, prevention, and abatement of nuisances or other grievances in, upon, or connected with said premises during said term, and shall also promptly comply with and execute all rules, orders, and regulations of the New York Board of Fire Underwriters for the prevention of fires," and "at the expiration of said term * * * will quit and surrender the premises hereby demised, in as good state and condition as reasonable use and wear thereof will permit, damages by the elements excepted."

Beginning with 1914, and at various times thereafter, the bureau of fire prevention made orders that certain material repairs and alterations be made in both buildings—substantially, that additions and repairs be made to the fire escapes, that fireproof frames and sashes be constructed in the windows in the front and rear of the buildings, that the stairway, from cellar to roof, be inclosed with fire-resisting material, and that a fire alarm system be installed. The plaintiffs demanded compliance by the defendant with these orders, which the defendant refused, and, the orders remaining unperformed, the vacation order followed, in pursuance of section 775 et seq. of the Greater New York Charter (Laws 1901, c. 466, as added by Laws 1911, c. 899).

A preliminary point is made, in respect to the premises 358 Bowery, that because the store on the ground floor was not included in the demise the defendant could not be, and was not, required by his lease to comply with the orders of the fire prevention bureau. It need only be indicated that the defendant has not even complied with so much of the orders as directly affect the demised premises, and that the vacation order was intended solely for the protection of so much of the building as was used as a lodging house, as appears from the fact that, notwithstanding the vacation order, the ground floor has since been permitted to be used as a store.

The issues of law are, in my judgment, precisely the same in both cases, and that issue is whether, because of the enforced vacation of the demised premises by order of the Supreme Court, the defendant is relieved from his obligations under the lease. Whilst the law books abound with cases involving substantially the same facts as are presented in the cases at bar, the issues of law were different. In the present cases the issue is not whether, the repairs having been made, the expense should be borne by the landlord or the tenant, but solely

whether the defendant is released from his written obligations because he may not use the premises for the purposes intended, save by complying with the orders of the fire prevention bureau.

The question whether a tenant in a particular case is obligated by his lease to make substantial repairs, under precisely such provisions as are contained in the present leases, has often been before the courts and has resulted in many conflicting decisions. Nor has the Court of Appeals in its most recent decision (Herald Square Realty Co. v. Saks & Co., 215 N. Y. 427, 109 N. E. 545) served to definitely fix the respective liabilities of landlords and tenants in cases of such disputes. Speaking through Werner, J., in that case, the court says:

"*It is impossible, of course, to lay down a general rule that will precisely fit all cases.* The language of this lease, construed in the light of contemporaneous regulations, usages, and customs, seems to require the conclusion that it was not the purpose of the parties to subject the tenant to an expense caused wholly by extraordinary and unforeseen building alterations made necessary by a subsequent and radical change in the policy of the municipal government."

The irreconcilability of the adjudicated cases arises from the conflict between the principle of law that parties are bound by their express agreements, and that courts may not make contracts for them, on the one hand, and the persuasive equities and hardships which would be imposed by holding tenants strictly to the language of their obligations, on the other. Were the question presented for determination whether the tenant has obligated himself to make the repairs in question, it would become important to determine whether the orders resulted by virtue of statutes enacted subsequent to the date of the lease. The burden to establish the imposition of greater statutory obligation, with respect to the demised premises, than existed at the time of making the lease, would in any event be upon the defendant.

The fire prevention bureau was created by chapter 899, Laws 1911, on October 6, 1911, and went into effect on the same day. The leases in question were executed on April 11, 1911, and went into effect on May 1, 1911. There is no proof before me, nor do I understand, that any of the orders of the fire prevention bureau resulted from this new statute. The effect of the statute, as I read it, was merely to establish a new bureau and to transfer to it certain duties and functions, which theretofore had been discharged by other bureaus of other municipal departments, and thus notwithstanding the decision of the Court of Appeals in the case of Herald Square Realty Co. v. Saks & Co., supra, I would be inclined to hold that under the terms of the leases and in view of the general language employed in fixing the defendant's obligation to make repairs, that the defendant was obligated to make the repairs in question, and is in no position to urge the order of vacation as a defense to this action.

However, in my judgment, it is unnecessary to determine this question in the light of fundamental principles which control the relations of landlord and tenant. Much confusion has arisen as to the respective duties and obligations of both landlord and tenant with respect to repairs of demised premises.

[1, 2] At common law neither the landlord nor the tenant, as between themselves, was under any contractual duty to make repairs to the demised premises, and there was no implied warranty, in the absence of either express or implied fraud (Steefel v. Rothschild, 179 N. Y. 273, 72 N. E. 112, 1 Ann. Cas. 676), that the premises were reasonably fit for the purpose for which they were hired, or that they were even tenantable. The doctrine of caveat emptor was applied to chattels real. In the case of Scheffler Press v. Perlman, 130 App. Div. 576, 115 N. Y. Supp. 40, where a lease of a loft provided that it was "to be used and occupied for the printing business," and contained an express covenant that it had a carrying capacity of "not less than 175 pounds to the square foot," it was held that there was no implied warranty that the loft was suitable as a printery. Mr. Justice Clarke, writing for the Appellate Division in this department, says as follows:

"In Edwards v. New York & Harlem R. R. Co., 98 N. Y. 245 [50 Am. Rep. 659], Judge Earl, writing for the court, said: 'It is a universal rule, to which no exception can be found in any case now regarded as authority, that upon the demise of real estate there is no implied warranty that the property is fit for occupation, or suitable for the use or purpose for which it is hired. The only implied warranty in such case is one for quiet enjoyment.' In Jaffe v. Harteau, 56 N. Y. 398 [15 Am. Rep. 438], it was held, as stated in the headnote, that 'a lessor of buildings, in the absence of fraud or any agreement to that effect, is not liable to the lessee or others lawfully upon the premises for their condition, or that they are tenantable and may be safely and conveniently used for the purposes for which they are apparently intended.' In Franklin v. Brown, 118 N. Y. 110 [23 N. E. 126, 6 L. R. A. 770, 16 Am. St. Rep. 744], Judge Vann said: 'It is not open to discussion in this state that a lease of real property only contains no implied covenant of this character and that in the absence of an express covenant, unless there has been fraud, deceit, or wrongdoing on the part of the landlord, the tenant is without remedy, even if the demised premises are unfit for occupation'—citing a number of cases, among which is O'Brien v. Capwell, 59 Barb. 504, where the court declared that: 'As between landlord and tenant, when there is no fraud or false representations or deceit, and in the absence of an express warranty or covenant to repair, * * * there is no implied covenant that the demised premises are suitable or fit for occupation, or for the particular use which the tenant intends to make of them, or that they are in a safe condition for use.' The foregoing cases are cited and approved in Steefel v. Rothschild, 179 N. Y. 273 [72 N. E. 112, 1 Ann. Cas. 676]."

In the case of Gould v. Springer, 206 N. Y. 641, 99 N. E. 149, which involved a lease of a theater, and the tenant had generally obligated himself to make repairs, and an order had been made by the board of health, the Court of Appeals at page 647 of 206 N. Y., at page 152 of 99 N. E., says in part as follows:

"The rights and obligations of the parties depend on the lease. There was no covenant on the part of the lessors to make repairs of any character, and hence, as between themselves and the lessee they were under no obligation to comply with the order made in 1904. Franklin v. Brown, 118 N. Y. 110, 113 [23 N. E. 126, 6 L. R. A. 770, 16 Am. St. Rep. 744]; Witty v. Matthews, 52 N. Y. 512, 514; Daly v. Wise, 132 N. Y. 306 [30 N. E. 837, 16 L. R. A. 236]. While they might have been subject to an action for a penalty brought by the city, that was no concern of the lessee and gave him no right to compel action by the lessors. *Even if noncompliance should result in the closing of the theater, the lessee would have no remedy against the lessors, for he had failed to protect himself against such a contingency by an appropriate covenant.*"

It is equally well established that the fact that a tenant has undertaken to make certain specific repairs imposes no obligation on the part of the landlord to make other repairs. Witty v. Matthews, 52 N. Y. 512. Thus the defendant in the cases at bar is in no position to urge the breach by the landlord of any contractual obligation as a defense to these actions, and the sole question to be determined is whether, upon any theory of "deprivation of use," either under the common law or by statute, the defendant may escape liability.

[3] The doctrine of eviction, strictly speaking, applies only where by the acts of the landlord, either of omission or commission, the tenant has been deprived of the beneficial enjoyment of the premises; but this doctrine has been extended, both by adjudication and statute, to other cases, and for the purposes of convenience the cases in which defenses of so-called eviction may be set up may be grouped into three classes:

First. Where by the acts of the landlord, or title paramount, the tenant is physically deprived of a material portion of the demised premises (actual eviction), or where he is deprived of its beneficial use (constructive eviction). This class embraces the usual cases of eviction to be found in the casebooks.

Second. Where by statute the use, to which the premises are limited by the express provisions of the lease, is prohibited. The case of Adler v. Miles, 69 Misc. Rep. 601, 126 N. Y. Supp. 135, is typical of this class. In that case a portion of a tenement house was let for a moving picture show. Subsequently an ordinance was passed prohibiting, under all circumstances, the use of any portion of a tenement house as a place for a moving picture show, and it was held that the contract of the parties, by act of law, became impossible of performance, and that the defendant was released from his obligations under the lease. The cases at bar are not governed by that decision, because in the cases at bar there was no absolute prohibition against the use of the demised premises as lodging houses, only such prohibition so long as certain orders remained unperformed.

Third. Cases falling within section 227 of the Real Property Law. That section provides as follows:

"When Tenant may Surrender Premises. Where any building, which is leased or occupied, is destroyed or so injured by the elements, or any other cause as to be untenantable, and unfit for occupancy, and no express agreement to the contrary has been made in writing, the lessee or occupant may, if the destruction or injury occurred without his fault or neglect, quit and surrender possession of the leasehold premises, and of the land so leased or occupied; and he is not liable to pay to the lessor or owner, rent for the time subsequent to the surrender."

Before a tenant may avail himself of the provisions of this statute, the premises must be either "destroyed or injured by the elements or any other cause." This statute, being in derogation of the common law, must be strictly construed, and by its express provisions there must be physical "injury or destruction" of the premises. Such was the effect of the decision in Floyd-Jones v. Schaan, 129 App. Div. 82, 113 N. Y. Supp. 472. It is not sufficient that the premises became

untenantable or unfit for occupancy, but it must be that such untenantability or unfitness was due to either destruction or injury. There is no claim in the cases at bar that the unfitness of the lodging houses arose through injury or destruction, but solely because of the noncompliance with certain requirements of a municipal bureau. The tenant assumed the risk that this bureau might at any time direct such repairs.

I have not overlooked the decision by the Appellate Division in this Department, in the case of Warrin v. Haverty, 159 App. Div. 840, 144 N. Y. Supp. 1004. It undoubtedly is that the attention of that court was not called to the decision of the Court of Appeals in Gould v. Springer, supra, since no reference to the latter case is made by the Appellate Division. In the case of Warrin v. Haverty, supra, the board of health ordered the landlord to make certain repairs in the premises, and the landlord demanded that the repairs be made by the tenant. The tenant refused to make the repairs, tendered possession, which the landlord refused, and the tenant then removed from the premises, and the action was brought by the landlord against the tenant to recover the cost of the repairs, as well as rent for the building subsequent to the alleged surrender, and the Appellate Division, in reversing a judgment in favor of the landlord, says:

"Here this building must have been untenantable during the time the repairs were being made, as it was when the defendant and her subtenant left it. The facts, it seems to me, are sufficient to bring the case within the meaning of the statute justifying a surrender. Tallman v. Murphy, 120 N. Y. 345 [24 N. E. 716]; Floyd-Jones v. Schaan, 129 App. Div. 82 [113 N. Y. Supp. 472], appeal dismissed 203 N. Y. 568 [96 N. E. 430]; Meserole v. Sinn, 34 App. Div. 33 [53 N. Y. Supp. 1072], affirmed sub nom. Meserole v. Hoyt, 161 N. Y. 59 [55 N. E. 274]"

—the section referred to being section 227 of the Real Property Law. Continuing, the court says:

"All that the statute requires in this respect is that the injury shall be of a physical nature and that the premises are thereby rendered untenantable and unfit for occupancy, and under the facts here proved this was a question for the jury."

There can be no quarrel with this statement of the law by the court, but the difficulty is that there was no injury to the premises in that case, any more than in the cases at bar. It is not to be presumed that the Appellate Division in that case intended to overrule those principles of the common law obtaining where the statute has no application. It undoubtedly is that the attention of the court was not directly drawn to the principles of the common law which controlled that decision, and certainly not to the decision by the Court of Appeals in Gould v. Springer, supra. The cases cited by the Appellate Division in the Warrin Case, will, upon examination, be found not to sustain the ruling of that court. They are all cases where the tenant was either deprived of the use of the premises by misfeasance or nonfeasance of the landlord, or where the untenantability arose from either physical injury or destruction.

I am led to the conclusion that section 227 of the Real Property Law has no application to a case where the premises are directed to

be vacated by one of the municipal departments by reason of the non-compliance with certain of its orders, except where the condition of untenantability arises from direct injury or destruction.

I accordingly award a judgment for the plaintiffs in both cases.